474 A.2d 605

Concepcion L. RIVERA, Administratrix of the Estate of
Frederick L. Rivera, Deceased

v.

The PHILADELPHIA THEOLOGICAL SEMINARY OF ST.
CHARLES BORROMEO, INC., a/k/a St. Charles Seminary
and Father Anthony Flynn, an individual, and Our Lady of
Lourdes Catholic Church

Appeal of OUR LADY OF LOURDES CATHOLIC CHURCH

Concepcion L. RIVERA, Administratrix of the Estate of
Frederick L. Rivera, Deceased

v.

The PHILADELPHIA THEOLOGICAL SEMINARY OF ST.
CHARLES BORROMEO, INC., a/k/a St. Charles Seminary
and Father Anthony Flynn, an individual, and Our Lady of
Lourdes Catholic Church

Appeal of The PHILADELPHIA THEOLOGICAL
SEMINARY OF ST. CHARLES BORROMEO,
INC., a/k/a St. Charles Seminary.

Concepcion L. RIVERA, Administratrix of the Estate of
Frederick L. Rivera, Deceased, Appellant

v.

The PHILADELPHIA THEOLOGICAL SEMINARY OF ST.
CHARLES BORROMEO, INC., a/k/a St. Charles Seminary
and Father Anthony Flynn, an individual, and Our Lady of
Lourdes Catholic Church.

Superior Court of Pennsylvania.

Argued April 5, 1983.

Filed March 23, 1984.

Reargument Denied May 25, 1984.

Appeal Allowed Oct. 19, 1984.

510

512

514

Byron L. Milner, Philadelphia, for Our Lady, appellant (at No. 310) and appellee (at Nos. 311 and 476).

Jeffrey M. Stopford, Philadelphia, for Rivera, appellant, (at No. 476) and appellee (at Nos. 310 and 311).

Charles W. Craven, Philadelphia, for Phila. Theological Seminary, appellant (at No. 311) and appellee (at No. 310 and 476).

Before SPAETH, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

Frederick Rivera, age 12, drowned while swimming in an indoor pool owned by The Philadelphia Theological Seminary of St. Charles Borromeo, Inc. (the Seminary). He was one of fourteen altar boys from Our Lady of Lourdes Catholic Church (the Church) who had been invited by the Reverend Anthony Flynn, a priest, to participate in an evening swimming party. Father Flynn took the boys to the pool at the Seminary without requesting permission from the Seminary and without prior notice to the Seminary that he intended to use the pool for a swimming party. There was evidence of use by others on prior occasions, however, and Father Flynn was of the understanding that a priest could use the pool at any time and could bring groups of persons with him to use the pool. Moreover, Father Flynn had attended the Seminary and was familiar with the means by which entrance could be achieved even when the pool appeared to be closed. When the boys arrived at the pool at 7:50 p.m., on the evening of December 17, 1976, the main entrance to the pool had been closed and locked. Neither attendants nor lifeguards were present. Father Flynn gained entrance to the building which housed the pool by going through a labyrinth of halls. He then opened a fire door through which the boys entered. Father Flynn, an excellent swimmer and trained in water rescue, intended to provide supervision while the boys were in the water. During the course of the boys' activities, he left the pool area and entered the locker room to use the telephone to order

pizza for the boys. While he was absent, Rivera was found at the bottom of the pool at the deep end. When Father Flynn learned that a body was lying on the bottom of the pool, he dove into the water and retrieved the body. His efforts to revive Rivera, unfortunately, were unsuccessful. The decedent's mother and administratrix, Concepcion Rivera, commenced wrongful death and survival actions, which were tried before a jury. At trial, the evidence did not disclose the precise cause of the drowning. The trial court directed a verdict in favor of Father Flynn. A jury awarded damages to the plaintiff and apportioned negligence as follows: Rivera—5%; the Church—65%; and the Seminary—30%. Post trial motions were denied, and judgments were entered on the verdict. Cross appeals were filed. Ms. Rivera challenges the jury's finding that her deceased son had been negligent. The Seminary argues that it can be liable only if plaintiff proved it had been guilty of "malicious" conduct and that plaintiff's proof failed to show such conduct. Finally, both the Seminary and the Church challenge various trial rulings and jury instructions by the trial court. We agree that a new trial must be granted.

"It is well settled that a judgment n.o.v. will be entered only in a clear case, and that any doubts will be resolved in favor of the verdict [winner]." *Stewart v. Chernicky,* 439 Pa. 43, 53, 266 A.2d 259, 265 (1970). The question of the negligence of plaintiff's decedent was for the jury if reasonable persons could disagree about whether his conduct had contributed to the injury. See: *Smith v. Port Authority Transit,* 257 Pa.Super. 66, 71–72, 390 A.2d 249, 251 (1978). "A child is held to that measure of care that other [children] of like age, experience, capacity and development would ordinarily exercise under similar circumstances." *Dunn v. Teti,* 280 Pa.Super. 399, 402, 421 A.2d 782, 784 (1980). It has been held, however, that a thirteen and one-half year old boy, who has been in and around water, should realize the risk involved in swimming in deep water, for the perils contained in a body of water are obvious to children at an early age. *Jennings v. Glen Alden Coal Co.,* 369 Pa. 532,

536, 87 A.2d 206, 208 (1952). See also and compare: *Hunt v. Graham*, 15 Pa.Super. 42 (1900).

In the instant case, the decedent had been a twelve year old, seventh grade student of above average intelligence. There was some evidence that he could not swim. Other evidence was to the effect that he could swim, but not well, and that on prior occasions he had been careful not to venture into deep water. One of the boys testified that he had seen the decedent "doggie paddling" in the deep end of the pool on the night of the drowning and had asked him if he was alright; other boys also had seen the decedent in the deep water. It was obvious which end of the pool was deep, they said. Under these circumstances, the trial court concluded, and we agree, that a jury could have found that the decedent was causally negligent in failing to avoid an obvious hazard. Ms. Rivera's motion for judgment n.o.v. was properly denied.

The Seminary also contends that judgment n.o.v. should have been entered in its favor. It relies upon the Recreation Use of Land and Water Act of February 2, 1966, P.L. 1860, 68 P.S. § 477–1 et seq. The stated purpose of this Act is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." 68 P.S. § 477–1. An owner of recreational land, as defined in the statute, "owes no duty of care to keep the premises safe for entry or use by others for recreational purposes." 68 P.S. § 477–3. An owner who "directly or indirectly invites or permits without charge any person to use such property for recreational purposes" does not incur liability for injury to such persons except "[f]or wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." 68 P.S. §§ 477–4 and 477–6. The Seminary contends that the Act relieved it from a duty to use reasonable care and, in the absence of malicious conduct, rendered it immune from liability to those persons who used its pool without charge. Ms. Rivera, on the other hand, argues that the statute was

intended to apply only to lands in rural Pennsylvania and not to lands in urban centers such as Philadelphia. These contentions require that we examine more closely the history and import of this legislation.

The Pennsylvania statute was patterned after the model act proposed in 1965 by the Council of State Governments. See Suggested State Legislation, Vol. XXIV, *Public Recreation on Private Lands: Limitation on Liability*, pgs. 150–152 (1965).

> The impetus behind the model legislation was "to encourage availability of private lands by limiting the liability of owners." The Council asserted that "in those instances where private owners are willing to make their land available to members of the general public without charge ... every reasonable encouragement should be given." 24 Suggested State Legislation, *supra* at 150.

*McCarver v. Manson Park and Recreation District*, 92 Wash.2d 370, 374, 597 P.2d 1362, 1364 (1979). See also: *Watson v. City of Omaha*, 209 Neb. 835, 838–40, 312 N.W.2d 256, 258 (1981).

The Pennsylvania Recreation Use Act repealed and replaced the Act of September 27, 1961, P.L. 1696, which had limited the "liability of landowners of *agricultural lands or woodlands* for personal injuries while hunting or fishing ...." (emphasis added). In the definitional section of the new statute, land is defined as "land, roads, water, watercourses, private ways, and buildings, structures and machinery or equipment when attached to the realty." 18 P.S. § 477–2(1). In this manner, the Recreation Use Act of 1966 eliminated all geographical and recreational use limitations.

■ It is a rule of statutory construction that "[a] change in the language of a statute ordinarily indicates a change in legislative intent." *Scanlon v. Commonwealth, Dept. of Transportation*, 502 Pa.Super. 577, 585, 467 A.2d 1108, 1112 (1983), quoting *Masland v. Bachman*, 473 Pa. 280, 289, 374 A.2d 517, 521 (1977) (footnote omitted). Accord: *Haughey v. Dillon*, 379 Pa. 1, 6, 108 A.2d 69, 72 (1954); *Commonwealth v. Lowe Coal Co.*, 296 Pa. 359, 365, 145 A.

916, 918 (1929); *Deremer v. Workmen's Compensation Appeal Board*, 61 Pa.Cmwlth. 415, 420, 433 A.2d 926, 928 (1981). If the legislature had desired to restrict the applicability of the Act to land in rural and semi-rural areas, it is reasonable to assume that it would have retained the "agricultural land or woodlands" language of the former statute or inserted similar limiting language in the new Act. The fact that it did not do so is strong evidence that the application of the Act was not intended to be limited in its scope to agricultural lands or woodland.

In addition to the history and unlimited definitional scope of the statute, it is significant that this Court has previously applied the statute to shield a bank from liability for simple negligence where a young man was injured while playing football on a vacant lot owned by the bank and situated across the street from the bank's office in populous Allegheny County, See: *Wiegand v. Mars National Bank*, 308 Pa.Super. 218, 454 A.2d 99 (1982).[1]

■ There is nothing unreasonable about applying the limited liability decreed by the legislature in a uniform manner to lands, whether urban, suburban or rural, which are made available for recreational use without charge. The broad language adopted by the legislature suggests most strongly that the legislature deemed the need for recreational lands in urban centers to be as great as the need therefor in rural areas of the State.

■ Although the Recreation Use Act has application to land and water areas located in cities as well as in rural parts of the State, it does not follow that the statute has application to public bathing places and swimming pools.

1. Plaintiff relies on decisions of the courts in New Jersey which limited the effect of a New Jersey recreational use statute to landowners in rural and semi-rural areas. See: *Harrison v. Middlesex Water Co.*, 80 N.J. 391, 402, 403 A.2d 910, 915 (1979); *Boileau v. DeCecco*, 125 N.J.Super. 263, 266–68, 310 A.2d 497, 499–500 (1973). This reliance is misplaced. Not only could such a limitation be found in the language used by the legislature in New Jersey, but such an interpretation was suggested by a statutory construction act in New Jersey which required that any statute in derogation of the common law be strictly construed. See: *Boileau v. DeCecco, supra* at 266–68, 310 A.2d at 500.

The definitional section of the Act does not specifically include swimming pools. Swimming pools are subject to regulation by and under the Public Bathing Law of June 23, 1931, P.L. 899, 35 P.S. § 672 et seq. This statute defines a swimming pool as "a place in the open or enclosed in any structure or building for the purpose of admitting two or more persons to bathe or swim together." Act of June 23, 1931, *supra*, § 2(2), 35 P.S. § 673(2). Whether an admission charge is made is irrelevant. The statute requires that a permit be issued by the Department of Environmental Resources before any swimming pool may be operated. It vests supervisory powers in the Department of Environmental Resources and has authorized it to adopt regulations to insure the health and safety of those persons who make use of public bathing places and swimming pools. Cf. *Commonwealth, Department of Environmental Resources v. Apple Valley Racquet Club*, 20 Pa.Cmwlth. 325, 342 A.2d 150 (1975). Pursuant to this authority, the Department has adopted rules and regulations pertaining to the operation of swimming pools. These include a duty to have lifeguards present at all times when a pool is open. The legislature, it would seem, has determined that swimming pools possess distinct characteristics from and greater potential for harm than other recreational facilities. Therefore, it subjected them to administrative supervision and regulation.

To interpret the Recreational Use Act to apply to swimming pools so as to eliminate the need to exercise reasonable care in the operation and maintenance of pools regulated by authority of the Public Bathing Law, *supra*, would be unreasonable and absurd. Such an interpretation would have the effect of nullifying for those who need it most the protection intended to be provided by departmental supervision and regulation. Such an interpretation would bring the two statutes into conflict.

According to well-known principles of statutory construction, where there is a conflict between the special provisions of one statute and the general language of another, the

special provision prevails and must be construed as an exception to the general provision. 1 Pa.C.S. § 1933. See: *Olshansky v. Montgomery County Election Bd.*, 488 Pa. 365, 370, 412 A.2d 552, 554 (1980); *Young v. Workmen's Compensation Appeal Bd.*, 39 Pa.Cmwlth. 265, 266–267, 395 A.2d 317, 318 (1978); *Paxon Maymar, Inc. v. Liquor Control Bd.*, 11 Pa.Cmwlth. 136, 141, 312 A.2d 115, 118 (1973). The Public Bathing Law has been made applicable specifically to swimming pools, and it is a criminal offense to operate a swimming pool in violation thereof.

■ We conclude, therefore, that the legislature did not intend to relieve an owner or operator of a swimming pool from a duty to use care to make the same safe for use by members of the public who use the pool without charge. The operation of swimming pools is regulated by the Public Bathing Law and the regulations adopted thereunder; and one who fails to exercise due care in making the same safe for use can be made to respond in damages to one who has been injured as a result of negligence. Therefore, the trial court properly denied the Seminary's motion for judgment n.o.v. For the several reasons hereinafter set forth, however, a new trial must be granted.

■ The trial court specifically instructed the jury that recovery against the Seminary could be based upon any one of three grounds advanced by the decedent's administratrix and that it was not necessary that she prevail on all of such theories of negligence in order to recover. The first was an alleged violation of the regulation adopted by the Department of Environmental Resources pursuant to the Public Bathing Law, *supra,* which required lifeguards at public swimming pools while they were open. Another theory advanced by the plaintiff was that the Seminary had violated a duty owed by an owner or occupier of land. The third basis for allowing recovery, the court charged, was Section 323 of the Restatement (Second) of Torts. This section provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as

necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

"The import of that section is that negligent performance or nonperformance must increase the risk of harm and that there must be reliance by the injured plaintiff upon the defendant's performing the service he has undertaken to render." *DeJesus v. Liberty Mutual Insurance Company,* 423 Pa. 198, 200–201, 223 A.2d 849, 850 (1966).

This section of the Restatement was inapplicable to the facts of this case, and it was error to charge thereon. There was no evidence that the Seminary had undertaken to perform a service to the decedent or that the decedent had relied thereon. The trial court, although conceding that its charge in this respect was erroneous, refused to grant a new trial because, it said, the jury could have returned a verdict against the Seminary on one or both of the other grounds. The court concluded, therefore, that the incorrect instruction had been harmless. With this we disagree.

▬▬ Although the grant or refusal of a new trial is often said to be a matter within the sound discretion of the trial court, it is well settled that reversal is required where the jury has been improperly instructed. *Fama v. Smith,* 303 Pa.Super. 414, 416, 449 A.2d 755, 756 (1982). See also: *Boushell v. J.H. Beers, Inc.,* 215 Pa.Super. 439, 441, 258 A.2d 682, 684 (1969). " 'Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or contradictory one which correctly states the law on the point involved, for the jury, assuming, as is their duty, that the instructions are all correct, may as readily have followed the incorrect as the correct one, and it is impossible to know which they accepted.' " *Smith v. Chardak,* 291 Pa.Super. 173, 182, 435 A.2d 624, 629 (1981),

quoting *Pedretti v. Pittsburgh Railways Co.*, 417 Pa. 581, 586, 209 A.2d 289, 292 (1965). Accord: *Morrissey v. Commonwealth, Department of Highways*, 440 Pa. 71, 80, 269 A.2d 866, 870 (1970); *Stegmuller v. Davis*, 408 Pa. 267, 270, 182 A.2d 745, 747 (1962); *Hisak v. Lehigh Valley Transit Co.*, 360 Pa. 1, 6, 59 A.2d 900, 903 (1948); *Dickson v. Wagner*, 316 Pa.Super. 93, 96, 462 A.2d 809, 811 (1983). Here, it is impossible to state with certainty that the verdict was not based upon the erroneous instruction regarding Section 323 of the Restatement (Second) of Torts. A new trial, therefore, is necessary.

The trial court's instructions regarding the Seminary's duty to have a lifeguard present, moreover, were confusing at best, misleading at worst. It had been the contention of the plaintiff that Father Flynn and, vicariously, the Church could be found liable because they had expressly invited the decedent to swim in the Seminary's indoor pool without providing adequate supervision. Plaintiff argued that the Seminary should also be found liable on grounds that it was an owner and occupier of land who had failed to exercise reasonable care to protect children who it knew or should have known were coming upon its land to use its pool. This responsibility could have been met, plaintiff argued, if the Seminary had employed one or more lifeguards to be present when other persons were known or believed to be entering its building to use the pool.

██ Citing the Public Bathing Law of June 23, 1931, P.L. 899, 35 P.S. § 672 et seq., the court told the jury that a regulation adopted pursuant thereto by the Department of Environmental Resources required that one or more lifeguards be present at all times while a public bathing place was open to use by bathers. A violation of the regulation, the court said, was itself negligence.[2] Then the court

---

**2.** The Seminary has not preserved for appellate review and we do not consider whether violation of an administrative regulation is negligence per se or merely some evidence of negligence. But see: *Brogley v. Chambersburg Engineering Co.*, 306 Pa.Super. 316, 319–20, 452 A.2d 743, 745–746 (1982); *Weimer v. Westmoreland Water Co.*, 127 Pa.Super. 201, 207–208, 193 A. 665, 667–668 (1937).

equivocated. It said: "I don't believe it is argued that, in the circumstances of this case, the Seminary was required to have a lifeguard present." The court concluded this phase of the charge, however, with a contradictory instruction.

[T]he position, I believe, is that there had to either be a lifeguard there, provided by the Seminary, if they knew or had reason to believe that children would be using the pool, or people would be using the pool, and/or, two, that they had a duty to supervise the use of the pool, particularly in the sense of requiring that there be a competent person or persons in charge of the outings such as these altar boys had that evening.

It has been pointed out that Father Flynn met all the qualifications of the act of assembly from the standpoint of experience. He had the necessary certification both in, I think, life saving and safety. But, then, there is a question of ... whether this was adequate ....

At best, this was confusing. We have previously said that where jurors have been "misled or confused by a particular charge, a new trial should be granted." *Takach v. B.M. Root Co.*, 279 Pa.Super. 167, 174, 420 A.2d 1084, 1088 (1980). See also: *Hamil v. Bashline*, 481 Pa. 256, 275, 392 A.2d 1280, 1289–1290 (1978); *Smith v. Clark*, 411 Pa. 142, 147, 190 A.2d 441, 443 (1963); *Fama v. Smith, supra* 303 Pa.Super. at 419, 449 A.2d at 758; *Smith v. Chardak, supra*, 291 Pa.Super. at 182, 435 A.2d at 629. The jury instructions in this case told the jury that the Public Bathing Law required the Seminary to have a lifeguard present, that plaintiff wasn't arguing that the Seminary should have had a lifeguard present, but that a lifeguard was, in the court's opinion, necessary if the Seminary had reason to believe that people would use the pool. However, said the court, Father Flynn met the qualifications of a lifeguard, although the jury could still find that this was inadequate. The trial court did not give the jury any objective standard which it could apply to determine the adequacy of Father Flynn's supervisory ability, particularly as it pertained to

the Seminary's duty to exercise reasonable care to provide lifeguard protection for anticipated use of the pool by others. These instructions regarding adequacy of supervision were incomprehensible and of little or no value in assisting the jury to determine the nature of the duty owed to the decedent by the Seminary.

At the conclusion of the evidence the trial court directed a verdict in favor of Father Flynn. This was done without regard for the evidence produced during trial and because the pleadings, in the opinion of the court, had failed to state a cause of action against Father Flynn. This was error. Father Flynn had participated actively as a party litigant throughout the trial, and there had been a substantial quantity of evidence which, if believed by the jury, showed that he had been negligent. Indeed, it was that evidence which enabled the jury to impute negligence to the Church under principles of respondeat superior.

An amended complaint filed during the pleading stage of the action by the plaintiff had named as defendants "His Eminence John Cardinol Krol as operator of St. Charles Seminary and Our Lady of Lourdes Catholic Church and Father Anthony Flynn." The complaint did not contain a separate count of negligence against Father Flynn, but he was referred to in the averments of negligence as the agent of the Church. An appearance was entered on his behalf. By stipulation of counsel, the name of the Seminary was subsequently corrected, and Cardinal Krol was eliminated from the caption. *The same stipulation provided expressly that the Church and Father Flynn were to remain as defendants.* Thereafter, the Seminary filed a pleading containing "New Matter" which, pursuant to Pa.R.C.P. 2252(d), alleged that the Church and Father Flynn were jointly liable or liable over to the Seminary because the Seminary's negligence, if any, "would be passive and secondary as opposed to the active and primary negligence of the co-defendants." On this state of the pleadings the case went to trial. Father Flynn had not at any time filed preliminary objections to the complaint; he

had not, in any other manner, advanced a pre-trial challenge to the sufficiency of the complaint or the Seminary's cross claim. By failing to object preliminarily, Father Flynn waived any formal errors, indefiniteness or lack of particularity in the pleadings. Pa.R.C.P. 1032; 2 Goodrich-Amram 2d § 1032:2. See also: *Maxson v. McElhinney*, 370 Pa. 622, 88 A.2d 747 (1952). Although the failure to state a cause of action upon which relief can be granted is never waived, this is merely "a restatement of the basic principles that a claim without legal merit cannot sustain a verdict or judgment .... *The pleadings become irrelevant on this issue.* Whether the claim ... is valid is a matter of law for the court, not a matter of pleading technique for the parties." 2 Goodrich-Amram 2d § 1032:5 (emphasis added).

When the trial court questioned the sufficiency of the pleadings, moreover, the Seminary moved to amend its pleaded claim against Father Flynn to conform to the evidence. In this way, it sought to state more specifically the negligence of Father Flynn upon which it based its claims for contribution and indemnification. The trial court denied the motion and directed a verdict in Father Flynn's favor.

■■■ Pa.R.C.P. 1033 contains specific authorization for an amendment which conforms a pleading to the evidence. Although such an amendment requires leave of court, it is now well settled that the right to amend must be liberally granted at any stage of the proceedings unless there is resulting prejudice to an adverse party. *Connor v. Allegheny General Hospital*, 501 Pa. 306, 311, 461 A.2d 600, 602 (1983); *Schaffer v. Larzelere*, 410 Pa. 402, 406–407, 189 A.2d 267, 270 (1963). See also: *Laursen v. General Hospital of Monroe County*, 494 Pa. 238, 243, 431 A.2d 237, 239 (1981); *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 325, 319 A.2d 914, 918 (1974); *Cingota v. Milliken*, 286 Pa.Super. 117, 121–122, 428 A.2d 600, 602 (1981); *Hoffman v. Hibbs*, 235 Pa.Super. 470, 344 A.2d 546 (1975). Thus, it has been held that general averments in the pleadings can be amended to make them specific in order to prevent a

case from turning on purely technical objections. *Keller v. R.C. Keller Motor Co.*, 386 Pa. 56, 124 A.2d 105 (1956). " 'Amendments which merely restate in a more distinct form the grounds set forth originally as the basis of the plaintiff's cause of action ... or merely vary the cause of action, as originally stated, so that the subject matter remains the same, may be made at any time, even after the statute of limitations has run on the claim sued for.' " *Hoffman v. Hibbs, supra*, 235 Pa.Super. at 474, 344 A.2d at 548, quoting 3 Standard Pennsylvania Practice 711 (1952).

██ It is clear that the Seminary's claim for contribution and/or indemnification from Father Flynn was not barred by any applicable statute of limitations; and the trial court did not so hold. The Seminary's claims for contribution and/or indemnity were distinct from the plaintiff's claim against Father Flynn; they did not accrue until it had first been determined that the Seminary was liable to the plaintiff. See: *McKenzie v. Cost Brothers, Inc.*, 487 Pa. 303, 312, 409 A.2d 362, 366–367 (1979); *Kitchen v. Borough of Grampian*, 421 Pa. 464, 219 A.2d 685 (1966); *Hughes v. Pron*, 286 Pa.Super. 419, 426, 429 A.2d 9, 12 (1981); *Trinity Area School District v. Dickson*, 223 Pa.Super. 546, 553, 302 A.2d 481, 485 (1973).

██ Under these circumstances, it was a manifest abuse of discretion for the court to enter a directed verdict in favor of Father Flynn without permitting an amendment which would have rendered the pleadings more specific and which would have brought them into conformity with the evidence. Even without such an amendment, as we have attempted to show, it was error to direct a verdict in favor of a party because of the generality of the pleadings against him when that party had not challenged the sufficiency of those pleadings pre-trial and after he had participated actively in a trial during which his liability was affirmatively demonstrated by competent evidence.

██ When this case is retried, it will be the responsibility of the trial court to instruct the jury regarding the

duty of care owed by the Seminary in maintaining its pool. In this respect, it will be significant to determine whether the Seminary invited church groups to use its pool or, at least, consented to use of the pool by groups other than seminarians. Whether Rivera was an invitee, licensee or trespasser, will most likely be an issue of fact to be decided by the jury upon proper instruction by the trial court. *Slavish v. Ratajczak*, 277 Pa.Super. 272, 419 A.2d 767 (1980). Contrary to argument advanced by the Seminary, the evidence at the prior trial did not establish as a matter of law that the decedent had been a trespasser. There was ample evidence from which the jury could have found that the Seminary, as a general practice, had invited, or at least consented to, use of the pool by groups not directly affiliated with the Seminary. This was particularly so with regard to groups from the Church whose altar boys were using the pool at the time of the drowning. Its practice regarding admission of groups required the Seminary to adopt precautions commensurate with the risk involved. *Murdock v. Pennsylvania Railroad Co.*, 150 Pa.Super. 156, 27 A.2d 405 (1942).

Whether the Seminary's negligence, if any, was a substantial factor in bringing about Rivera's death will also be an issue to be determined by the jury upon proper instructions by the trial court. The Seminary has complained that at the first trial the court refused a submitted point for charge on superseding cause. In view of our decision to award a new trial for other reasons, it is unnecessary to determine the correctness of the Seminary's requested instruction. It may be observed, however, that if the trial court adequately and accurately instructed the jury with respect to causation, reversible error will not be found merely because the court failed to accept a specific point on superseding cause. *Piekarski v. Club Overlook Estates, Inc.*, 281 Pa.Super. 162, 178, 421 A.2d 1198, 1207 (1980).

Because the same issue may arise upon a retrial, we consider and comment briefly upon the contentions of the Seminary and the Church that the trial court erred in

permitting portions of Father Hagan's pre-trial discovery depositions to be read to the jury as substantive evidence during plaintiff's case in chief. Pa.R.C.P. 4020(a)(2) provides:

> The deposition of a party or of any one who at the time of taking the deposition was an officer, director, *or managing agent* of a party or a person designated under Rule 4004(a)(2) or 4007.1(e) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party, may be used by an adverse party for any purpose. (Emphasis added).

This rule was lifted from federal practice. The term "managing agent," according to the federal decisions, "should not be given too literal an interpretation but rather should depend largely on whether the interests of the individual involved are identified with those of his principal and on the nature of his functions, responsibilities and authority ... respecting the subject matter of the litigation." *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96 (S.D.N.Y.1968), quoting *Kolb v. A.H. Bull Steamship Co.*, 31 F.R.D. 252, 254 (E.D.N.Y.1962). Whether a person is a managing agent "is to be answered pragmatically on an ad hoc basis." *Reliable Volkswagen Sales and Service Co. v. World-Wide Automobiles Corp.*, 26 F.R.D. 592, 594 (D.N.J.1960).

> [S]ome of the practical considerations to be appraised are (1) whether there is any danger that the proposed deponent's interests at the time of the taking of the deposition are adverse or hostile to the party whose managing agent he is alleged to be; otherwise stated, whether the deponent's interests are still identified with his principal's and whether he is loyal to his principal; (2) whether the deponent is invested by his principal with general powers to exercise his judgment and discretion in dealing with his principal's matters with respect to the subject-matter of the litigation; (3) whether the deponent is a person who could be depended upon to carry out his principal's direction to give testimony at the demand of a party engaged in litigation with the principal; (4) what are the

deponent's functions, powers and duties (as well as his rank or title) with reference to the subject-matter of the litigation; (5) whether any person or persons in higher authority than the deponent sought to be examined are in charge of the particular matter or possessed of the information as to which the examination is sought.

*United States v. Dorothy McAllister*, 24 F.R.D. 316, 318 (S.D.N.Y.1959).

In the instant case, Monsignor Vincent M. Burns was the Rector of the Seminary. Requests to use the pool came to him. However, he would refer them to Father Hagan, who was Dean of Students. It was Father Hagan who scheduled the use of the pool so as to avoid conflicts and who was responsible for enforcing rules adopted by the Seminary for use of the pool by seminarians and others. Father Hagan, whose loyalty to the Seminary was above question, had been invested directly with day to day supervision of the swimming pool and possessed greater familiarity with its operation than any other person. As such, we cannot say that the trial court erred in concluding that he was managing agent of the pool. Therefore, it was not error to allow his depositions to be read to the jury by counsel for the plaintiff.[3]

Both the Church and the Seminary have complained about evidentiary rulings and jury instructions pertaining to Ms. Rivera's proof of damages. Because the case must be retried, several observations may be appropriate. "[A] claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough." *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 453–454, 197 A.2d 721, 727 (1964). However, the "law does not require that proof in support of claims for damages or in support of ... compensation must conform to the standard of mathematical exactness." *Lach v. Fleth,*

**3.** It may be observed that pursuant to Pa.R.C.P. 4007.1(e) a corporation or association can be called upon to name a person to testify to matters "known or reasonably available to the organization" and the depositions of such person may then be "used by an adverse party for any purpose." Pa.R.C.P. 4020(a)(2).

361 Pa. 340, 352, 64 A.2d 821, 827 (1949). Testimony concerning lost fringe benefits, it has been held, is properly received; lost fringe benefits can be considered in making an award in a death case, at least to the extent that they are not wholly speculative and can be translated into income reasonably to be anticipated if the decedent had lived. See: *Vizzini v. Ford Motor Co.*, 72 F.R.D. 132, 137 (E.D.Pa. 1976), *rev'd on other grounds*, 569 F.2d 754 (3rd Cir.1977). Income tax consequences are not to be considered by the jury. "Income tax as it relates to damages should be mentioned neither in argument nor in jury instructions." *Gradel v. Inouye*, 491 Pa. 534, 547, 421 A.2d 674, 680 (1980). Accord: *Girard Trust Corn Exchange Bank v. Philadelphia Transportation Co.*, 410 Pa. 530, 538, 190 A.2d 293, 298 (1963). Finally, the projected loss of future earnings is not to be discounted or reduced to present value. *Kaczkowski v. Bolubasz*, 491 Pa. 561, 421 A.2d 1027 (1980).

Reversed and remanded for a new trial. Jurisdiction is not retained.