**YORK HAVEN POWER COMPANY and Metropolitan Edison Company, Appellants,**

v.

**Sharon K. STONE, Individually and as Administratrix of the Estate of Kenneth Lee Stone, Deceased and Donna M. Meinsler Administratrix of the Estate of Lynn C. Meinsler, Deceased, Appellees.**

**YORK HAVEN POWER COMPANY and Metropolitan Edison Company, Appellants,**

v.

**Donna M. MEINSLER Administratrix of the Estate of Lynn C. Meinsler, Individually and as Parent and Natural Guardian of Jennifer L. Meinsler, a Minor, Appellees.**

Superior Court of Pennsylvania.

Submitted April 2, 1998.

Filed July 24, 1998.

Joseph C. Phillips, Harrisburg, for appellants.

Scott D. Moore, Carlisle, for Sharon K. Stone, appellee.

Michael R. Kelly & April L. Strang-Kutay, Harrisburg, for Donna M. Meinsler, appellee.

Before JOHNSON, STEVENS and OLSZEWSKI, JJ.

STEVENS, Judge:

In this appeal from the Court of Common Pleas of Dauphin County which denied the motion for summary judgment filed by Appellants York Haven Power and Metropolitan Edison Company, we are asked to determine if Appellants are immune from suit under the auspices of the Recreational Use of Land and Water Act (RUA), 68 P.S. § 477–1 *et seq.*

After a thorough review of the certified record and the briefs of the parties, we find that Appellants are not immune from suit and affirm the decision of the trial court.

On April 30, 1994, two men, Lynn Meinsler and Kenneth Stone, were boating on what is commonly referred to as "Lake Frederick" on the Susquehanna River. Lake Frederick was formed when the Susquehanna River south of Harrisburg was dammed to service the Three Mile Island Power Plant and has become an area which is used for boating and other water-related sports.

On the day in question, the men were drinking alcohol at various taverns, and sometime in the evening, they boated to a local bar-restaurant whereupon returning to their boat, a storm arose. Meinsler and Stone were last seen in their boat heading toward the dam area which is owned and operated by Appellants. On May 1, 1994, the boat operated by Meinsler and Stone was found lodged on the main channel of the dam. It is unclear from the record how the accident occurred but as a result of the accident, both men drowned.

Sharon K. Stone and Donna M. Meinsler, the decedents' wives, brought suit, individually and as administratrices of their husbands' estates, alleging that the deaths were the result of Appellants' failure to warn of the location of the dam. Appellants sought summary judgment on the basis that the RUA provided immunity. For example, Appellants permit the public to use the lake area, without charge, for limited recreational purposes, thereby triggering, argue Appellants, the immunity provisions of the RUA.

Summary judgment was denied by the trial court, which held the damming of the Susquehanna River and creation of Lake Frederick was a "substantial improvement" and, the trial court concluded, the immunity provisions of the RUA were inapplicable. *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 507 A.2d 1 (1986). The trial court, by order dated March 19, 1997, found that the order denying summary judgment " ... involves a controlling question of law to which there is a substantial ground for difference of opinion ... " and ordered an immediate interlocutory appeal to this Court

pursuant to Pennsylvania Rules of Appellate Procedure 312 and 1301. This appeal followed.

Appellants claim that they are entitled to summary judgment and argue they are immune from tort liability under the RUA. Appellees respond that the damming and the creation of Lake Frederick represent a substantially improved parcel of land and, as such, immunity under the RUA does not apply. Even if the waterway is not considered improved, Appellees argue, Appellants' failure to warn of the dangers of the dam represents a " ... willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity", in accord with 68 P.S. § 477–6(1), thereby subjecting Appellants to liability.

Our standard of review in a motion for summary judgment is well settled.

This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

*Electronic Laboratory Supply Co. v. Cullen*, 712 A.2d 304, 307 (Pa.Super. 1998) (citation omitted). With this standard in mind, we review the trial court's denial of summary judgment.

The relevant statutory law is as follows: Section 477–1 of the RUA identifies the purpose of the act: " ... to encourage owners of land to make land and water areas available to the public for recreational purposes by

limiting their liability toward persons entering thereon for such purposes." 68 P.S. § 477–1; Section 477–3 of the RUA states in relevant part that: " ... an owner of land owes no duty of care to keep premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for such purposes." Section 477–4 provides in relevant part that:

> [A]n owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
>
> (1) Extend any assurance that the premises are safe for any purpose.
>
> (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

68 P.S. § 477–4. The RUA further defines "land" as "land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to realty." 68 P.S. 477–2(1).

We are guided by a series of decisions by the Pennsylvania Supreme Court which have interpreted the RUA and have concluded that "improved land" is not protected thereunder. The Supreme Court has held that "the intended beneficiaries of the RUA, in addition to the general public, are landowners of *large unimproved tracts of land which, without alteration,* is amenable to the enumerated recreational purposes within the act." *Mills v. Commonwealth,* 534 Pa. 519, 526, 633 A.2d 1115, 1119 (1993)(emphasis added). The question, therefore, before this Court is whether Lake Frederick is considered an improved tract of land. *Mills, supra.*

*Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 507 A.2d 1 (1986), involved a suit brought by the estate of a boy who drowned in an indoor swimming pool owned by the defendant. The Pennsylvania Supreme Court opined that while the plaintiff entered the defendant's pool free of charge, the pool represented an improvement, and the defendant was not exempt from suit under the RUA. *Rivera, supra.* The Court considered the

relatively small size of the pool area, and held that "the intention of the Legislature [is] to limit the applicability of the Recreation Use Act to outdoor recreation on largely unimproved land ... " *Rivera,* 510 Pa. at 16, 507 A.2d at 8.

In *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991), the City of Philadelphia was not granted tort immunity under the RUA where a plaintiff was injured on a city owned basketball court. The Court focused on the improvements to the recreational facilities and stated: "When a recreational facility has been designed with improvements that require regular maintenance to be safely enjoyed, the owner of the facility has a duty to maintain the improvements." *Walsh,* 526 Pa. at 238, 585 A.2d at 450.

In *Mills, supra,* two individuals were injured at Penns Landing, a historic harbor-style recreation area in the Philadelphia area. The Court, after a review of the development of the area, found that "the area in question has been vastly altered from the natural state in which William Penn discovered it several hundred years ago." *Mills,* 534 Pa. at 525, 633 A.2d at 1118. The Court again held that the RUA is meant to benefit "landowners of large unimproved tracts of land which, without alteration, is amenable to the enumerated recreational purposes within the act." *Id.* As a result of the rather profound changes which occurred in the area of Penns Landing, the Supreme Court did not extend immunity to the defendant under the auspices of the RUA. *Mills, supra.*

In *Lory v. City of Philadelphia,* 544 Pa. 38, 674 A.2d 673 (1996), the Supreme Court granted immunity to the City of Philadelphia after the estate of a boy brought suit after the boy drowned in a natural swimming area of a park. The Court in *Lory* found that a natural pond was considered unimproved for purposes of the RUA. *Lory, supra.*

The Pennsylvania Commonwealth Court has provided persuasive authority in determining what property is considered "improved" for purposes of the RUA. A lacrosse field has been found to be "improved" land under the RUA. *Seiferth v. Downingtown Area School District,* 145 Pa.Cmwlth.

562, 604 A.2d 757 (1992). In *Brown v. Tunkhannock Twp.*, 665 A.2d 1318 (Pa. Commw.Ct.1995), it was determined that a cause of action based on an injury sustained by an individual who fell from bleachers was not barred under the RUA because the bleachers represented "improvements" to the land.

A review of states with statutes similar to the RUA provides sparse but persuasive guidance. In *Harrison v. Middlesex Water Co.*, 80 N.J. 391, 403 A.2d 910 (1979), the estate of a drowning victim brought suit against the defendant for an action in negligence. The defendant operated a reservoir that was created by the damming of the Rahway river, and the plaintiff drowned while ice skating on the reservoir; the defendant sought immunity under New Jersey landowner's liability act. N.J.S.A. 2A: 42A–2 to –5. The highest court of New Jersey held that, "it is not reasonable to posit as a legislative objective ... immunization of all landholders from liability for injuries incurred during the course of outdoor recreational activity on their property, *particularly with respect to improved lands freely used by the general public* ... " *Harrison*, 80 N.J. at 401, 403 A.2d at 914 (emphasis added).

As the preceding cases have demonstrated, the RUA did not provide tort immunity from athletic fields, large waterfront parks, or the owners of swimming pools. Conversely, tort immunity has been granted in natural areas, such as natural ponds.

In conclusion, upon review of the RUA and applying the standards set forth by the Pennsylvania Supreme Court, it is clear that the damming of the Susquehanna River in the instant case represents an improvement to the natural state of the Susquehanna River. In fact, in the area where the dam has been placed, the river has taken on the appearance of a lake, obviously a substantial improvement to the physical character of the Susquehanna River from its natural state. As such, application of the RUA is not proper in this case, and Appellants are not entitled to the benefit of the immunity provisions of the RUA.

The decision of the trial court denying Appellants' motion for summary judgment is affirmed. Accordingly, we remand this case for trial.

Affirmed; remanded for trial; jurisdiction relinquished.

Concurring and Dissenting Opinion by OLSZEWSKI, J.

OLSZEWSKI, Judge, concurring and dissenting.

One must always be cautious to differ when esteemed colleagues render an opinion excellently buttressed by persuasive rationale and thorough review of precedents. Nevertheless, I am obliged to so hazard today. I believe the majority has reached a technical result overlooking the policy-driven jurisprudence of the Recreational Use of Land and Water Act (RUA). Moreover, I fear today's opinion will significantly diminish the private recreational areas heretofore publicly enjoyed by the citizens and visitors of our Commonwealth.

Our Supreme Court has repeatedly instructed us to apply the RUA as necessary to achieve the Act's policy goals. *See Mills v. Commonwealth*, 534 Pa. 519, 522–26, 633 A.2d 1115, 1117–19 (1993) (rejecting an "overly technical application of the RUA [that] would lead to inconsistent results and thwart the intended purposes of the act"); *Walsh v. City of Philadelphia*, 526 Pa. 227, 237–39, 585 A.2d 445, 450–51 (1991) (refusing to apply the RUA where doing so "would be to ignore the purpose of the Act and to disregard the expectations of the users of such a facility"); *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 12–17, 507 A.2d 1, 7–9 (1986) (refusing to apply the RUA to an indoor swimming pool because such application would contravene the statute's purposes).

The RUA is "designed to encourage the opening up of large private land holdings for outdoor recreational use." *Rivera*, 510 Pa. at 16, 507 A.2d at 8. It is not intended to provide blanket immunity for recreational facilities "designed with improvements that require regular maintenance to be safely used and enjoyed." *Walsh*, 526 Pa. at 238, 585 A.2d at 450. Thus, the RUA "applies only to

lands that are largely unimproved in character, and where no admission fee is charged." *Lory v. City of Philadelphia,* 544 Pa. 38, 40, 674 A.2d 673, 674 (1996) (citing *Walsh, supra* ). The phrase "largely unimproved in character" is meant to broadly distinguish areas where RUA coverage will further the Act's purposes from areas where it would not. The phrase is not intended to mechanistically distinguish altered landscapes from the untouched. Instead, the Act specifically includes some areas altered by human development. *See, e.g.,* 68 P.S. 477–2(1) (expressly including ancillary "buildings, structures and machinery or equipment" in the definition of land). Even extensive human alteration does not necessarily destroy the "largely unimproved" character of an area. Land drastically altered to a new natural state may remain unimproved. *See Brezinski v. County of Allegheny,* 694 A.2d 388 (Pa.Cmwlth. 1997) (finding park with sculpted landscape unimproved for RUA purposes). Rather than proceed mechanistically, we must consider all characteristics of the area in question and then determine whether it is the type of undeveloped private land for which the Legislature intended coverage. I posit that Lake Frederick is exactly the type of area that the RUA is intended to cover.

Apart from the method of its creation, Lake Frederick is, by all accounts, indistinguishable from a natural lake. It is a large area left open for those who enjoy the outdoors. Its dangers are comparable to those of a natural lake. Further, users have no better reason to rely on the protection of its owner than users of a natural lake. Lake Frederick is not like a basketball court or swimming pool, where we expect meticulous maintenance. Rather, it is a place people go to experience and risk the pleasures of the outdoors.

Although the record lacks specific dimensions for Lake Frederick, the length and dangers of the deceased's journey describe a large area difficult to police. It is impracticable for a private party to keep such an area safe for public use. *See Rivera,* 510 Pa. at 16 n. 17, 507 A.2d at 8 n. 17 ("The need to limit owner liability derives from the impracticability of keeping large tracts of largely unde-

veloped land safe for public use."). Rather than risk liability, the savvy owner would exclude the public from enjoying such areas. I suspect our Commonwealth is replete with reservoirs and other areas, once the product of significant alteration, that have now returned to a natural-like state. Today's decision risks depriving the public of free access to all these places.

In reaching its conclusion, the majority relies overmuch on *Harrison v. Middlesex,* 80 N.J. 391, 403 A.2d 910 (N.J.1979). In *Harrison,* the New Jersey Supreme Court determined that its recreation statute does not apply to a reservoir artificially created by damming a minor tributary of the Rahway River. *Id.* at 394, 402, 403 A.2d at 911, 915. The *Harrison* rationale, however, contains virtually no mention of the reservoir's artificial character. Rather, the *Harrison* decision turns on the reservoir's location in a highly populated suburban community. *Id.* at 401–02, 403 A.2d at 915. The New Jersey Supreme Court concluded that their statute applies only to rural and semi-rural lands. *Id.* We have expressly rejected such an interpretation of the RUA. *See Rivera v. Philadelphia Theological Seminary,* 326 Pa.Super. 509, 474 A.2d 605, 610–11 (1984), *modified on different grounds,* 510 Pa. 1, 507 A.2d 1 (Pa.1986). As the rationale of *Harrison* has been discredited in Pennsylvania, the case is inapposite.

Nevertheless, I conclude the trial court was correct in denying appellants' motion for summary judgment. The RUA provides indemnity to "owners" which include "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." 68 P.S. §§ 477–1, 477–2, 477–4. The trial court found that appellants are in control of Lake Frederick because they control the dam. The record, however, reflects a genuine issue of material fact concerning appellant's authority to exclude the public from Lake Frederick. As the RUA is designed to encourage opening of private lands for public use, it makes little sense to deem a party who cannot exclude the public "in control" of the land. A party who cannot exclude cannot affect whether the area is open to the public and, thus, extending protection does not fur-

ther the purposes of the RUA. Accordingly, I believe the power to exclude is a necessary element of being in control under the RUA definition of owner. Because a genuine issue of material fact remains concerning whether appellants are owners of Lake Frederick, summary judgment would be premature. *See, e.g., Smitley v. Holiday Rambler,* 707 A.2d 520, 525 (Pa.Super.1998). Accordingly, I would remand this matter for further proceedings.

For the forgoing reasons, I concur in the decision to affirm the denial of summary judgment, but I dissent from the majority's conclusion that appellants are unprotected by the RUA as a matter of law.