Campbell v. Temple University

*Neil I. Mittin,* for plaintiffs.
*Roland J. Atkins,* for defendant Temple.
*Linda S. Battistini,* for defendant City of Philadelphia.

YOUNGE, *J.,* November 10, 2005—

## I. PROCEDURE

Plaintiffs, Juanita Davidson Campbell and William Campbell, appeal this court's denial of their motion to enforce the settlement agreement. Defendant, Temple

University, appeals from this court's granting of plaintiff's motion for post-trial relief awarding a new trial limited to the issue of damages. Defendant also appeals this court's denial of its motion for post-trial relief seeking a new trial on the issues of liability and damages.

The trial errors averred by plaintiff, William Campbell, will be incorporated into the discussion of the claims raised by plaintiff, Juanita Davidson Campbell, in that his cause of action rests in loss of consortium. The City of Philadelphia raises no claims on appeal because the jury found that it was not negligent. N.T., 11/18/04, 26. Prior to trial, the Honorable Sandra M. Moss signed an order releasing the Commonwealth of Pennsylvania Department of Transportation from this case by stipulation of the parties. Order (11/9/04).

## II. FACTS

Plaintiff, Juanita Davidson Campbell, brought this action against the defendant, Temple University, for injuries suffered when she slipped and fell while crossing from the east side of North Broad Street to the west side.

The plaintiff received an invitation directly from the defendant to attend a graduation ceremony that was being held on September 6, 2001, in Mitten Hall located on defendant's campus. N.T., 11/15/04, 63-64. September 6, 2001 was a clear, sunny day, and the plaintiff drove her automobile to the ceremony and parked on the west side of Broad Street in front of McGonigle Hall. She walked north on Broad Street to the intersection of Broad and Berks Mall and crossed Broad Street from west to east to get to Mitten Hall, which is located on the opposite side of Broad Street. *Id.,* 64. At the conclusion of the

ceremony, the plaintiff left Mitten Hall and began to return to her car by walking in the opposite direction along the same route she previously used to get to Mitten Hall. When she reached the west side of Broad Street, the plaintiff alleged that she tripped over a dropped curb, that is, a curb that is sunken below the level of the sidewalk. *Id.,* 66-67. This curb had dropped between an inch and an inch and three quarters below sidewalk. *Id.,* 82.

The plaintiff's most noteworthy injuries were a fracture to the right elbow and a fracture to the left wrist. The left wrist was fractured to the extent that the bone protruded upward but not through the skin. Both fractures required surgery and a T-buttress plate made out of titanium steel with five screws was placed in the plaintiff's left wrist. *Id.,* 67-68. The plaintiff lost time from work due to these injuries and needed a personal assistant for several weeks after the accident to take care of her daily needs. *Id.,* 73. The plaintiff also received other injuries such as bruises to her face and forehead and minor cuts and scrapes. *Id.,* 68. The plaintiff incurred $24,281.28 in medical expenses as a result of her fall. N.T., 11/18/04, 121. This dollar amount of medical expenses figured prominently in this court's rulings on plaintiff's motion for a new trial on damages.

At the time of trial, the plaintiff was still suffering from what she argued were permanent residual problems, such as lack of movement in her fingers and swelling in her hand. N.T., 11/15/04, 71. She was unable to close her left hand and make a fist. *Id.,* 74. The defendant's medical expert, Dennis McHugh M.D., admitted that the injury to plaintiff's wrist was serious and necessitated a second surgery to remove the plate in her wrist. *Id.,* 71.

In defense of this action, the defendant argued that it did not cause the plaintiff's injuries. *Id.,* 84. It argued that the plaintiff had not tripped over the dropped curb, but fell elsewhere in the street. N.T., 11/17/04, 88. It also argued that it was unaware of the dropped curb and that another entity might have caused the curb to drop suddenly by conducting construction activities in the area. N.T., 11/17/04, 90. The defendant also raised the issue of the plaintiff's comparative negligence. It pointed out that the plaintiff would not have fallen if she had watched where she was walking. *Id.,* 85. It also pointed out that the curb within the confines of the crosswalk was in perfect condition, and that if the plaintiff had remained within the crosswalk, she would not have tripped on the dropped curb. *Id.,* 91. The defendant also attempted to have the jury instructed that the City of Philadelphia was responsible for the plaintiff's injuries because it was primarily responsible for the maintenance and repair of the curb. Def.'s proposed points for charge nos. 26 and 27.

This court oversaw extensive settlement discussions between the parties prior to and during trial. The defendant made a $75,000 offer to settle the lawsuit prior to trial, but this offer was rejected. The defendant maintained the $75,000 offer at other points throughout the negotiations. *Id.,* 16. On the second day of jury deliberations, the plaintiff accepted the defendant's offer to settle the case; however, the defendant responded that the offer had lapsed as of the start of trial and was no longer available to be accepted. *Id.,* 5. In contrast to the defendant's argument, it was the understanding of this court and all of the attorneys involved in the litigation, with the exception of counsel for the defendant, that the defendant's offer remained on the table as of the first

day of jury deliberations and that it was never withdrawn. *Id.,* 5-6. This court declined to rule on whether it could enforce the settlement agreement until a later date and allowed the jury to render its verdict. *Id.,* 6.

The jury found that the defendant was negligent and that such negligence was the factual cause of the plaintiff's injuries. The jury also found that the plaintiff's comparative negligence accounted for 50 percent of the accident. They initially awarded the plaintiff $12,140.64 for medical expenses and $12,140.64 for pain and suffering. The fact that this award equaled exactly one-half of the plaintiff's medical expenses suggested that the jury might have reduced this award in accordance with its finding of comparative negligence. To protect the integrity of the jury verdict, this court instructed the jury to reconsider its ruling to ensure that it had not erroneously, and in violation of this court's prior instruction, reduced the award in accordance with its finding of comparative negligence. Upon reconsideration, the jury returned to the courtroom, having increased each of the aforementioned categories by 100 percent, such that when this court molded the verdict in accordance with the amount of comparative negligence found, the final award equaled exactly the plaintiff's requested amount for medical expenses.

Following trial, plaintiff filed a motion for post-trial relief wherein she sought a new trial on the issue of damages or in alternate additur. The plaintiff also filed a motion to enforce the settlement agreement that it alleged had been accepted prior to the jury rendering its verdict. The defendant opposed both of these motions and filed a motion for post-trial relief wherein it listed

28 alleged trial errors and sought a new trial on the issue of liability and damages. The defendant then submitted a memorandum of law in support of its motion for post-trial relief following production of the notes of testimony. This memorandum discusses most of the alleged trial errors raised in the motion for post-trial relief, but it contains headings and reorganizes the issues into coherent arguments. The memorandum also abandoned the pursuit of several issues that were listed in the motion for post-trial relief, but were truly lacking in merit.

Two hearings and a conference were held in an attempt to resolve the motions that were filed post-trial. The first hearing was held before this court on December 22, 2004. Due to the complex issues involved with enforcing the settlement agreement, Judge Sandra Mazer Moss then held a conference on January 6, 2005. A final hearing was held before this court on March 18, 2005. At the March hearing, this court granted the plaintiff's motion for a new trial on the issue of damages; all other motions were denied. This court's ruling on all three post-trial motions has now been called into question by the pending appeal.

### III. DISCUSSION

This court will discuss its reason for granting the plaintiff's motion for post-trial relief on the issue of damages in heading A of this section. The plaintiff's motion to enforce the settlement agreement will then be dealt with in heading B. For the sake of ease, this court will respond to the issues raised in defendant's memorandum of law in support of its motion for post-trial relief before discussing the issues raised in its motion for post-trial

relief that were abandoned in its memorandum. Defendant raises the following issues in its memorandum of law in support of its motion for post-trial relief:

(1) "The court committed an error of law in refusing plaintiff's proposed points for charge with respect to plaintiff's status as a trespasser, pursuant to her deliberate decision to jaywalk, and the resultantly reduced standard of care." Def. memo p. 5 (3/17/05).

(2) "The court committed an error of law in refusing plaintiff's proposed points for charge as regards the duty to maintain traffic control devices, such as the curb at issue." *Id.,* 8.

(3) "The court committed an error of law refusing plaintiff's proposed points for charge with respect to plaintiff's duty to keep a proper look-out for her safety, and open and obvious danger as precluding Temple's duty of care." *Id.,* 10.

### A. *Plaintiff's Motion for Post-Trial Relief Wherein She Requested a New Trial on the Issue of Damages or in Alternate an Order for Additur*

This court awarded the plaintiff a new trial on the issue of damages because the jury's decision to award the amount of the stipulated medical expenses while effectively failing to award damages for pain and suffering was inconsistent.

Our Supreme Court has held, "that a jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition or injury was the sole

cause of the alleged pain and suffering." *Davis v. Mullen,* 565 Pa. 386, 773 A.2d 764 (2001).

The *Davis* case arose from an automobile accident wherein liability was not at issue. The jury awarded the plaintiff damages for his medical expenses and personal property loss, but did not award damages for pain and suffering. *Id.* at 390, 773 A.2d at 766. The Supreme Court ruled that the trial court properly exercised its discretion when it denied the plaintiff's motion for a new trial because there was a reasonable basis for the jury to believe that the plaintiff did not suffer pain or that his alleged injuries were the result of a preexisting condition. *Id.* In that case, the plaintiff had been involved in prior automobile accidents and the plaintiff admitted:

"[H]e did not miss any work as a result of the accident; he waited 20 days after the accident before visiting [with the] doctor; he quit treatment after only 20 visits with the doctor; and, he has not received any medical treatment for the injuries he claims to have suffered as a result of the accident since July of 1995. Davis' doctor also admitted that he could not say for certain if the spinal injury was related to the accident or whether it was caused by some other event." *Id.* at 397, 773 A.2d at 770.

In the case sub judice, no reasonable juror could have believed that the plaintiff did not suffer an injury that produced compensable pain, and the failure to award compensation for pain and suffering warranted a new trial on damages.

The Supreme Court also dealt with the issue of whether a trial court abused its discretion in awarding a new trial when a jury failed to award damages for pain and suffer-

ing in *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995). In that case, all of the medical experts agreed that the plaintiff had suffered a neck sprain and shoulder blade injury. In addition, plaintiff's medical expert clearly attributed plaintiff's medical injuries to the accident with the defendant. *Id.* at 527, 653 A.2d at 640. The court reasoned that the jury verdict defied common sense and logic because it flew in the face of uncontested evidence proving that the plaintiff had suffered obvious objective injuries that produced compensable pain. *Id.* at 524, 653 A.2d at 639. In upholding the trial court's grant of a new trial, the Supreme Court distinguished the fact pattern in *Neison* from the often cited *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988). It stated, "These injuries suffered from a violent automobile accident are more than transient rubs of life as was the needle puncture in *Boggavarapu.*" *Id.* at 524, 653 A.2d at 639.[1]

In the case at hand, the injuries suffered by the plaintiff were not insignificant transient rubs of life. The plaintiff fractured her right elbow and left wrist and surgery was required to repair these fractures. N.T., 11/15/04, 73. The plaintiff suffered from obvious objective injuries of the type that would produce compensable pain. Therefore, the jury defied common sense and logic when it effectively awarded the plaintiff nothing more then the exact amount of her medical expenses. Clearly, the verdict sheet technically provides for compensation for pain and suffering, but in reality the plaintiff received only

---

1. In *Boggavarapu,* the Supreme Court held that a jury may properly conclude that the pain of a dog bite followed by a tetanus shot is a transient rub of life for which the jury could find that the plaintiff suffered no compensable pain and award damages limited to the cost of the emergency room treatment.

the value of her medical expenses. Interestingly enough, defendant argued in its motion for post-trial relief that this court erred in separating pain and suffering from medical expenses on the verdict sheet. Def. mot. for post tr. relief ¶3.

The record clearly illustrates that the jury intentionally awarded the plaintiff the value of her stipulated medical expenses. Initially, the jury awarded the plaintiff $12,140.64 for medical expenses and $12,140.64 for pain and suffering. It appeared that the jury had misunderstood this court's instructions and reduced the award in accordance with its finding of comparative negligence. To remedy the situation, this court reinstructed the jury on the application of the Comparative Negligence Act and asked them to continue deliberations. Moments later, the jury returned to the courtroom and awarded the plaintiff $24,281.28 for medical expenses and $24,281.28 for pain and suffering. The fact that the jury had conducted these mathematical calculations proves that the jury intended to award the exact amount of medicals. Counsel for the defendant, Roland Atkins, Esquire, even admitted on the record "I think what the jury did is, they took medicals and wanted to award the plaintiff the full amount of her medicals and apportioned it between pain and suffering and the medical." N.T., 11/18/04, 34.

### B. *Plaintiff's Motion To Enforce the Settlement Agreement*

This court declined to review the merits of plaintiff's motion to enforce the settlement agreement because it awarded the plaintiff a new trial on the issue of damages. By awarding a new trial limited to damages, the plaintiff was placed in the same position she was in prior

to receipt of the jury verdict, and the defendant was encouraged to place its settlement offer back on the table.

In order to resolve plaintiff's motion to enforce the settlement agreement, this court may have been required to recuse itself since in support thereof, plaintiff apparently relies almost totally upon interpretation of off-the-record settlement discussions held with defense counsel in the presence of this court. These discussions were not confidential or impermissibly ex-parte; however, their content was clearly intended to remain off the record. Resolution of the said motion would have required a fact-finder to determine, based upon testimony possibly even of the court, whether pursuant to language utilized in discussions, the defendant allowed the plaintiff to reasonably believe such previous offer remained open. This court's decision to award a new trial on the issue of damages now renders this issue moot.

## C. *Defendant's Memorandum in Support of Its Motion for Post-Trial Relief*

Defendant requested a new trial on issues of liability and damages and in its memorandum identified three areas wherein this court allegedly committed reversible errors at trial. This court will address the defendant's claims in sections numbered 1 through 3 below. In section 4, this court will then turn to a discussion of the issues raised in the motion for post-trial relief that were not pursued in the memorandum.

In each of these three areas, the defendant claimed that a new trial was warranted because this court failed to instruct the jury in accordance with its proposed jury instructions. The standard of review used by appellate

courts when reviewing a trial court's jury instructions is as follows:

"In examining jury instructions, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. *Stewart v. Motts,* 539 Pa. 596, 606, 654 A.2d 535, 540 (1995). Error in the jury charge is sufficient ground for a new trial if the charge, taken as a whole, is inadequate, unclear, or has the tendency to mislead or confuse rather than to clarify a material issue. *Id.* A charge will be found adequate unless 'the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error.' *Id.* (citing *Voitasefski v. Pittsburgh Rys. Co.,* 363 Pa. 220, 226, 69 A.2d 370, 373 (1949))." *Von der Heide v. PennDOT,* 553 Pa. 120, 123, 718 A.2d 286, 288 (1998).

### 1. This Court Did Not Commit an Error of Law in Refusing the Defendant's Proposed Points for Charge With Respect to the Plaintiff's Reduced Standard of Care Due to the Plaintiff's Status As a Trespasser

Defendant argued that this court committed a reversible error by determining as a matter of law that the plaintiff's status at the time of the accident was that of an invitee rather then a trespasser. Defendant further argued that this court committed a reversible error in not instructing the jury that the defendant's only duty to a trespasser was to refrain from willful or reckless conduct. These issues are raised in paragraphs 2, 9, 23, 24, and 25 of the defendant's motion for post-trial relief wherein it argues that this court erred when it failed to

instruct the jury in accordance with proposed points for charge 33, 34, and 35.

Generally, the determination of an individual's status as an invitee, licensee, or trespasser is one of fact for the jury. *Slobodzian v. Beighley,* 401 Pa. 520, 164 A.2d 923 (1960); *Rivera v. Philadelphia Theological Seminary,* 326 Pa. Super. 509, 474 A.2d 605 (1984). However, the court may remove from the jury the issue of a person's status at the time of an accident when the facts and law are clear. *Palange v. City of Philadelphia, Law Dep't,* 433 Pa. Super. 373, 640 A.2d 1305 (1994). It is possible for an invitee or licensee to become a trespasser by exceeding the scope of his or her privilege to be on a premise. However, a person does not exceed his or her status as a business visitor and lose his or her privilege when that person is in a place where it is usually and customary for a business visitor to be. *Barron v. Hydrotated Anthracite Fuel Co.,* 159 Pa. Super. 35, 46 A.2d 506 (1946).

The defendant argued that at the time of the accident, the plaintiff exceeded the scope of her invitation and became a trespasser by jaywalking in violation of 75 Pa.C.S. §3543(c). The chief piece of evidence that the defendant used to support this argument is the plaintiff's testimony that based on the location where she fell, it appeared that she had veered just outside the confines of the crosswalk. The defendant argued that due to 75 Pa.C.S. §3543(c), the plaintiff's invitation was restricted to the confines of the crosswalk and that when she broke the law and left the confines of the crosswalk she became a trespasser. The defendant further made the strained argument that the plaintiff's alleged violation of 75 Pa.C.S. §3543(c) meant that she was unlawfully

on the premise and fit within the definition of a trespasser.[2] N.T., 11/16/04, 94-97.

Defendant's argument defies logic and reason. No reasonable jury could have found that the plaintiff became a trespasser merely by stepping over a line painted on a street that outlines a crosswalk. No evidence suggested that the plaintiff veered from the crosswalk to any great extent. Her testimony established that she might have been a few feet outside the confines of the crosswalk when she fell. Based on *Barron,* the plaintiff could not have become a trespasser because it is usual and customary for people to cross a street in the general vicinity of a crosswalk but a few feet outside of the lines painted on the street.

## 2. This Court Properly Ruled That a Curb Is Not a Traffic Control Device and Refused To Instruct the Jury As Such

In paragraphs 8, 20, 21, and 22 of its motion for post-trial relief, the defendant argued that this court erred when it failed to instruct the jury in accordance with proposed points for charge 26, 27, and 31. With these charges, the defendant requested that this court instruct the jury that as a matter of law that a curb is a traffic control device and that the co-defendant, the City of Philadelphia, was responsible for the repair of the dropped curb in question.

---

2. Pennsylvania Suggested Standard Jury Instruction §7.01C states: "A trespasser is a person who enters or remains on land in the possession of another without a right or privilege to do so." Restatement of the Law, Second, Torts, §329 states, "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise."

The need to define a curb as a traffic control device was crucial to the defendant's case because the co-defendant, the City of Philadelphia, is immune from tort liability with the exception of eight areas as set forth in 42 Pa.C.S. §8542. Two of the eight areas where the City of Philadelphia is subject to suit are for its maintenance of sidewalks and traffic control devices. However, the city is secondarily liable for its maintenance of sidewalks while it is primarily liable for the maintenance of traffic control devices.[3] The City of Philadelphia argued that the dropped curb in question was not a traffic control device but was instead a sidewalk for which it was secondarily liable.

---

3. 42 Pa.C.S. §8542(b)(7) reads:

"Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice of or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other person, the local agency shall be secondarily liable only and such other persons shall be primarily liable."

42 Pa.C.S. §8542(b)(4) reads:

"Trees, traffic controls and street lighting.—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition."

Defendant's proposed points for charge are flawed because they presuppose that the City is responsible for the maintenance and repair of curbs. Absent a deed or special agreement, the primary responsibility for the repair and maintenance of a curb rests with the owner of the property abutting that curb.[4] Sound policy principles support the application of this general rule to the present case. There are thousands of miles of curb within the boundaries of the City of Philadelphia that the municipality would be required to monitor for the slightest tripping hazard if it were primarily responsible for the maintenance of curbs. Defendant presented no legal or factual argument at the time of trial to defeat the applicability of the general rule holding them responsible for the dropped curb abutting its property.

---

4. Philadelphia Code 11-505(1) provides:

"(1) The sidewalks of all the public streets, and the roadways and sidewalks of all private streets, shall be graded, curbed, paved and kept in repair at the expense of the owners of the land fronting thereon, except as otherwise provided in the section."

Philadelphia Code 11-505(6) provides:

"All sidewalks, curbs, and driveways across sidewalks shall be laid or set in accordance with specifications and regulations of the Department of Streets and the provisions of this chapter . . . (c) The owner of the adjacent property shall keep the curb in repair . . . ."

The Commonwealth Court has also stated that the responsibility for the maintenance and repair of land rests with the abutting property owner. It wrote:

"Public bodies normally assume responsibility for the property within the curb lines, *i.e.,* the gutters and the roadway or cartway. On the other hand, the abutting property owner retains responsibility for the conditions outside the curb lines, *i.e.,* the sidewalk, the tree planting strip, and the curb itself. *Fisher v. City of Philadelphia,* 112 Pa. Super. 226, 170 A. 875 (1934). Absent some deed or dedication requirement, by definition, for there to be a curb, there must be an abutting property owner with maintenance responsibilities." *Hubbard v. PennDOT,* 660 A.2d 201, 204 (Pa. Commw. 1995).

Defendant did argue that a curb is a traffic control device; however, this argument is not supported by the law. Defendant argued that a curb is a traffic control device because it keeps vehicular traffic on the roadway, alerts pedestrian traffic to stay in the sidewalk area, protects pedestrians from errant vehicles, keeps vehicles from jumping and entering the sidewalk, defines the location of the parking lane, and provides a benchmark between the roadway and the sidewalk. Def. memo. of law 9-10, 3/21/05. A similar argument was rejected in *Slough v. City of Philadelphia,* 686 A.2d 62, 65 (Pa. Commw. 1996), *aff'd,* 553 Pa. 673, 720 A.2d 485 (1998), where the court held that a median strip was not a traffic control device. The court in that case acknowledged that a median strip channels, separates, and directs lanes of traffic; however, it held that these facts were insufficient to define a median strip as a traffic control device. *Id.* at 65.

### 3. This Court Properly Instructed the Jury on the Duty That an Owner of Land Owes to Invitees and the Effect of Pennsylvania's Comparative Negligence Statute on That Duty

In paragraphs 13-19 of the defendant's motion for post-trial relief, the defendant argues that this court erred when it failed to charge the jury in accordance with its proposed points for charge 6, 10, 12-14, 16, and 17. Def. mem. law in support of mot. for post tr. relief exhibit 1 (3/17/05). These proposed points for charge sought to have the jury instructed that the law does not impose liability if it is reasonable for the possessor to believe that the dangerous condition is open and obvious. These charges also sought to have the jury instructed that the

plaintiff had a duty to watch where she was going. Def. memo. of law p. 10 (3/17/05).

The additional instructions requested by the defendant were unnecessary. This court adequately instructed the jury on the duty that the defendant owed the plaintiff in this case when it charged the jury in accordance with Pa. SSJI §702A.[5] The language in Pa. SSJI §702A and language in the instructions given by this court can be found in substantially the same form in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983); *Skalos v. Higgins*, 303 Pa. Super. 107, 449 A.2d 601 (1982). This instruc-

---

5. Pennsylvania Suggested Standard Jury Instruction §702A reads:

"An [owner] [occupier] of land is required to use reasonable care in the maintenance and use of the land, and to protect invitees from foreseeable harm. An [owner] [occupier] of land is also required to inspect the premises and to discover dangerous conditions. An [owner] [occupier] of land is liable for harm caused to invitees by a condition on the land if: (1) the [owner] [occupier] knows or by using reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm, and (2) the [owner] [occupier] should expect that the invitees will not discover or realize the danger, or will fail to protect themselves against it, and (3) the [owner] [occupier] fails to use reasonable care to protect the invitees against the danger.

"An [owner] [occupier] of land is liable to invitees for any harm that the [owner] [occupier] should have anticipated, regardless of whether the danger is known or obvious."

The instruction read by this court reads:

"An owner of land is liable for harm caused to his or her invitees by a condition on the land if he or she . . . one, knows or by their exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm; and two, should expect that his or her or their invitees will not discover or realize the danger or fail to protect themselves against it; and three, fails to exercise reasonable care to protect them against the danger, an owner of land is liable to his or her or their invitees for any harm he or she should have anticipated regardless of whether the danger is known or obvious."

tion adequately explained the duty that the defendant owed the plaintiff in this case. This court also allowed the jury to consider plaintiff's obligation to watch where she was walking. This court allowed the defendant to cross-examine the plaintiff on the issue of her ability to see the dropped curb and her attentiveness while walking. N.T., 11/15/04, 149-50. This court instructed the jury on Pennsylvania's Comparative Negligence Act. N.T., 12/18/04, 116. The jury was provided adequate testimonial evidence and legal instruction on plaintiff's obligation to watch where she was walking.

### 4. The Miscellaneous Issues Raised in the Defendant's Motion for Post-Trial Relief That Were Not Pursued in Its Memorandum of Law Are Without Merit

The defendant argues that this court erred when it precluded it from presenting the concept that a third party was responsible for the dropped curb in question. Def. motion for post-trial relief ¶¶1, 5, 7, and 12. At trial, defendant attempted to argue that the Philadelphia Water Department, Philadelphia Gas Works or some other governmental entity may have caused the dropped curb by conducting construction activities or driving a truck over the curb. To support this argument, the defendant pointed to the fact that a manhole and utility pole were located near the dropped curb. However, this court precluded the issue of third-party liability from being interjected into the case because there was no evidence to show that a third party actually caused the dropped curb. The defendant did not specifically join these governmental agencies and did not develop evidence against them during discovery. N.T., 11/17/04, 89-90.

Defendant's argument that this court presented a defective verdict sheet to the jury is without merit. Def. mot. for post tr. relief ¶¶3-4. It argues that the verdict sheet named only Temple University and failed to name the City of Philadelphia. However, the verdict sheet did in fact name the City of Philadelphia and ask the jury to apportion negligence against the city. N.T., 11/17/04, 129. The defendant also found fault with the fact that the verdict sheet asked the jury to make a separate award for pain/suffering and medical expense instead of a lump sum award for all damages. No objection appears on the record at the point where the parties discussed the structure of the verdict sheet. During trial, N.T., 11/16/04, 111-12.

The defendant argued that this court erred when it did not allow it to refer to the plaintiff as a jaywalker during closing argument. *Id.,* ¶11. Referring to the plaintiff as a jaywalker was inflammatory and unnecessary. This court fully allowed the defendant to present the plaintiff's contributory negligence to the jury, and did nothing to impede the defendant's ability to present the fact that the plaintiff was in fact outside of the crosswalk when she fell.

The defendant argues that this court erred when it allowed the plaintiff to question Michael Gentile on the issue of its responsibility for the curb in question. *Id.,* ¶26. However, no objection to this question was lodged at the time. N.T., 11/16/04, 66.

The defendant claims that over its objection, the plaintiff was permitted to ask leading questions of Officer Michael McShane. However, a review of the record does not reveal that this issue was preserved for appellate re-

view by an objection placed on the record at the time that Officer Michael McShane testified, nor does defendant identify such an objection. *Id.*, 78-91.