# Jones *v.* American Caramel Company, Appellant.

*Negligence—Master and servant—Dangerous machinery—Unguarded machinery—Act of May 2, 1905, sec. 11, P. L. 352.*

1. Where an employer of labor installs a revolving exhaust fan without any guard, in such a position that an inexperienced laborer, who has not been warned or instructed as to danger from the fan, is injured by his hand coming in contact with it in the course of his work, such employer will be responsible for the injury sustained, and nothing will relieve him except proof that the workman was himself guilty of contributory negligence in connection with the accident.

2. Under the Act of May 2, 1905, sec. 11, P. L. 352, requiring that "machinery of every description shall be properly guarded," it is the duty of an employer to properly guard a revolving fan placed in an inconspicuous position and the defendant is not to be relieved from the charge of negligence because the plaintiff fails to show that it was customary in factories to place guards or screens over revolving fans.

3. Under the Act of May 2, 1905, P. L. 352, the legislative mandate is that machinery of every description shall be properly guarded, and customary disregard of this is but customary negligence rendering everyone guilty of it responsible for the consequences resulting directly and solely from it.

*Negligence—Statutory duty—Usage.*

4. Ordinary usage which is in disregard of a statutory duty cannot be a test of negligence.

Argued May 18, 1909. Appeal, No. 141, Jan. T., 1909, by defendant, from judgment of C. P. York Co., Oct. T. 1907, No. 17, on verdict for plaintiffs in case of James R. Jones and Wilson H. Jones, by the said James R. Jones, his father and next friend, v. American Caramel Company. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BITTENGER, P. J.

The facts relating to the accident are set forth in the opinion of the Supreme Court.

The court charged in part as follows:

[Now, the jury will inquire who is telling the truth in reference to that matter; whether the boy was mistaken as to the order he received, and did he act on the mistaken idea. He says the superintendent or foreman is mistaken as to what he said to this plaintiff; that it is not probable that he would tell him to do this work in that way, without telling him that it was dangerous back of the table. You will consider whether it is natural and probable that he told him to stand in front of the table, without telling him that there was danger from this fan, and that therefore he should stand in front. Would it be natural for him, or in anywise probable, for this foreman, knowing the danger of going behind that table, and having seen other boys stand there, to tell the plaintiff to stand in front of the table, without further stating that that was the only safe place to stand? These are matters to reason about. The jury are like all other reasonable beings, or it is supposed that they are or you would not have been selected by both parties to try this case. It becomes, therefore, your duty to ascertain as to which order was given; and you will inquire about these things, and reason these things out.] [11]

[The law is to warn young people. If they come to a shop, and have not had any experience, they must be warned of danger about machinery. This especially if they have had no experience about machinery. But if they are over fourteen years of age, they are presumed to know the danger of ma-

chinery; or, if they had been working at anything like that before, it is not necessary to explain to them that the machine is dangerous at which they are working.  They are presumed to have eyes and experience; and it is not necessary to warn them.  This, I repeat, if they have been working at such place before, and knew how to operate the machine.'  But if they are put to work in a dangerous neighborhood, or where there are other dangerous machines, or they are liable to fall into danger from those machines which are around the place where they are working, and are not properly guarded, and they have had no experience, why then it is necessary for the employer to explain to him or them that there is danger in that locality where they are required to work; and, not only to give the proper warning of danger, but also to show them how to manage the machine that they are not accustomed to work.  This is an obligation on the part of the employers; and they are bound to give them sufficient information to enable them to escape danger.  This is decidedly so when they are inexperienced, and have not been engaged at work on such machines before, or in the neighborhood of such machines.] [12]

[The testimony on the part of the plaintiff shows that this young man was injured there for want of a sufficient guard around this fan, and for want of sufficient instruction; that he was not instructed, or that he was not even told, where to stand; that he had no information given to him by the foreman, or by anyone else, of the dangerous character of this fan; that he did not know of its dangerous character, and that he should not put his hand up near that fan; and that without any knowledge of the fan he put his hand up to save his hat, and the injury resulted as described.] [13]

[The plaintiff alleges as I said before, that this fan was maintained in a dangerous condition; that it did not have a guard upon it as required by the act of assembly; in other words, a proper guard.  In the year 1905 the legislature, I suppose upon a demand of people to require protection in so far as the workmen were concerned, passed a law regulating the running of machine shops, with a good many sections in the act; and there are a good many provisions in it also.  Section 11 of the act,

p. 354 of the Pamphlet Laws of 1905, is as follows, after previous sections providing a great many other things: That " the owner or person in charge of an establishment where machinery is used shall provide belt shifters or other mechanical contrivances for the purpose of throwing on or off belts or pulleys. Whenever practicable, all machinery shall be provided with loose pulleys. All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws, grind stones, emery-wheels, fly wheels, and machinery of every description shall be properly guarded."

This act of assembly requires "whenever practicable;" and the court instructs you that machinery of this character, uncovered, shall be properly guarded; and we instruct you in this case, if you shall find that this fan was not properly guarded, that then there is evidence before the jury of negligence on the part of this defendant. This is a positive act of assembly. It is mandatory; and everybody engaged in this kind of business, using machinery, is compelled to comply with its requirements. If it is practicable to have a proper guard to this fan, it would seem to the court—but that is for the jury to decide—if it was practicable to have a proper guard, they were bound to have it. There is nothing that would excuse them; it was negligence for them not to have it. The jury will say whether, from the weight of all the evidence in the case, there was a proper guard to this fan;—a guard that would prevent injury to this plaintiff, or anyone who had occasion to be there on proper business.

The defense say that they have properly guarded this fan by placing this heating table in front of it, by placing obstacles at one end of the table, and by the inconvenient method that exists at the other end of the table of getting behind the table, because of pipes and other obstructions. Now, was that a proper guard; that is, all the guard that is proven? Or, I should say, was it proven that there was no guard over this fan that extended into the room? Was this table and the surrounding objects, which were proved here by the witnesses as being there, a sufficient guard to this fan? That is a matter for the jury to determine from the weight of the evidence. It

would seem to the court to be a sufficient guard to protect anybody from danger, with the space that has been proved as existing around this table; but that is a question for the jury to determine; and it is for them to determine whether it was properly guarded. If it was properly guarded, why then there was no negligence in maintaining this fan without any other guard. If it was not properly guarded, the jury can find the defendant negligent in running its works without complying with the act of assembly. As we have already said, the act of assembly is mandatory, and made for the good purpose of properly guarding all dangerous machinery. [14]

Verdict and judgment for James R. Jones for $800 and for Wilson H. Jones for $7,500.

*Errors assigned* were (11–14) above instructions, quoting them.

*Charles A. Hawkins* and *Henry C. Niles*, of *Niles* and *Neff*, for appellant.—Not knowing of a danger will not excuse if it is such that it should have been known by the exercise of the senses: Stackhouse v. Vendig, 166 Pa. 582; Barnes v. Sowden, 119 Pa. 53; Robb v. Connellsville, 137 Pa. 42; Dehnhardt v. Phila., 15 W. N. C. 214; Phila. v. Smith, 23 W. N. C. 242; Shallcross v. Phila., 187 Pa. 143; Lumis v. Traction Co., 181 Pa. 268; Beer v. Clarion Twp., 17 Superior Ct. 537; Cunningham v. Bath Iron Works, 92 Maine, 501 (43 Atl. Repr. 106); Bentley v. Mill Co., 38 Pa. Superior Ct. 172; Martin v. Niles-Bement Pond Co., 214 Pa. 616; Tomaczewski v. Dobson, 208 Pa. 324; Kaufhold v. Arnold, 163 Pa. 269.

*Jos. R. Strawbridge*, with him *James J. Archer*, for appellee.—The dangers surrounding an inexperienced employee should be pointed out to him, and where no instruction is given the case is for the jury: Neilson v. Coal & Iron Co., 168 Pa. 256; King v. Ford River Lumber Co., 53 N. W. Repr. 10; Lebbering v. Struthers, Wells & Co., 157 Pa. 312; Ross v. Walker, 139 Pa. 42; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543; Rummell v. Dilworth, 131 Pa. 509; Schiglizzo v. Dunn,

211 Pa. 253; Garrity v. Casting & Machine Co., 17 Pa. Superior Ct. 623.

OPINION BY MR. JUSTICE BROWN, October 11, 1909:

At the time Wilson H. Jones sustained the injuries for which he and his father are seeking compensation in this action he was in the employ of the American Caramel Company, operating a candy factory in the city of York. With little, if any, previous experience with machinery, he entered its employment September 5, 1906, when he was within three days of being eighteen years old, and was directed to size and cut candy. When so engaged on September 8—the fourth day of his employment—he was told by the foreman that he had enough candy cut and was hurriedly ordered to leave the table where he was working and scrape off a heating table a few feet distant. This table, ten feet long and three feet three inches wide, extended along the west side of the room parallel with and two feet three inches distant from the wall. Above it there was set in an opening in the wall, about five feet from the floor, an exhaust fan forty-four inches in diameter. This fan contained six sharp, curved metal blades about twenty inches long. The hub around which the belting passed that operated the fan was nearly seven feet above the floor and projected out from the wall about nine inches. The blades projected from an inch and a half, at their narrowest point, to nine inches at the widest. The fan was used to draw the foul air and dust from the room through the window in which it was set, and revolved nearly 500 times a minute. In obedience to the order given him, Jones proceeded to the east side of the table and cleaned a part of it off. It was too hot, however, as he testified, for him to lean over it and scrape off the west side, and he went back of it to scrape that side. While scraping there he felt that his hat was being drawn from his head, and, reaching up his left hand to keep it on, that member was caught in the revolving fan and so badly mangled that amputation was necessary.

The exhaust fan was installed to secure greater safety and comfort to the employees of the defendant and constituted a

part of the machinery of its factory. Of it the learned trial judge said in a portion of his charge which has not been assigned as error, "The fan was intended to exhaust the foul air from the room, and also to remove certain small particles of dust which accumulate in a place of that kind; and it was done doubtless for the safety and comfort of the workmen; and done as required by an act of assembly." It is to be assumed that the fan was in place in compliance with the requirements of sec. 11 of the Act of May 2, 1905, P. L. 352. Another requirement of that same section is that "machinery of every description shall be properly guarded," and the defendant is not to be relieved from the charge of negligence because, as its learned counsel contend, the plaintiffs failed to show that it was customary in factories to place guards or screens over revolving fans. The legislative mandate is that machinery of every description shall be properly guarded, and customary disregard of this is but customary negligence, rendering everyone guilty of it responsible for the consequences resulting directly and solely from it. Ordinary usage which is in disregard of a statutory duty cannot be a test of negligence.

Whether the fan had been properly guarded was submitted as a question of fact to the jury. In submitting it to them the learned trial judge very properly said that it did not seem to him that there had been sufficient guard to protect anybody from danger. He might have gone further and instructed them to find against the defendant on this question, for the only conclusion to be reached, under all the evidence, is that the fan was not guarded at all. That it was dangerous in its unguarded condition to anyone likely to come in contact with it is not disputed, and as no instruction or warning was given to the inexperienced employee as to its danger and how to avoid the same, the question of the defendant's negligence was so clearly for the jury, apart from the testimony of the plaintiff as to his ignorance of the existence of the fan, that nothing more need be said on this branch of the case.

While the statute made it the duty of the defendant to properly guard the fan, it in no degree relieved the employee from the duty of care on his part. For the consequence of his con-

tributory negligence the law remained the same as if the act of 1905 had not been passed. True, under that act the negligence of an employer can now be more readily established, but the injured employee must still present his case free from negligence on his part contributing to his injury; and the jury were properly instructed that if Jones did anything he ought not to have done which contributed to his injury, there could be no recovery. The foreman testified that he had directed him to stand in front of the heating table in cleaning it, but admits that he said nothing about going back of it. He further stated that the direction to stand in front was given because of the danger of the fan, but in the same breath testified that he had said nothing about the fan. The testimony of Jones is that he had not been directed to stand in front of the table; that he was simply told to scrape it; that it was too hot for him to reach over it and scrape the part next to the wall, and that he went around it, finding no obstruction in his way, and began to scrape from the west side. There was testimony by other witnesses that employees had scraped the table from that side in the presence of the foreman. Jones further testified that he knew nothing of the fan that was almost immediately back of him, as he had not noticed it in the three or four days of his employment and no one had ever told him it was there, and that in trying to keep his hat on his head his hand was caught by the blades. Neither the foreman nor any other witness called by the defendant testified that Jones had been told that the fan was there. It is earnestly insisted, however, that he ought to have seen it and known the danger of touching it. The jury could fairly have found otherwise from the testimony of several witnesses—some of them called by the defendant—who testified that even when attention was called to the fan it looked like an open window, except for the dark spot in the center, and that no sound came from it indicating its presence, as whatever noise was made by its revolutions was drowned by the other machinery in the room.

In the portions of the charge assigned as error we have discovered nothing that ought not to have been said to the jury, and in defendant's first, second, third and fourth points, asking

for binding instructions, the statutory duty of guarding the machinery is entirely overlooked. Neither of the points could have been affirmed. The act of 1905 will become a dead letter if an employer who has failed to properly guard his machinery can relieve himself from that duty by the plea that the danger was so obvious that his injured employee ought to have been aware of it and was not entitled to any warning against it. Only the contributory negligence of an injured employee, lawfully employed, will relieve the employer from the consequences of his disregard of his statutory duty. The assignments of error are all overruled and the judgment is affirmed.