## Barron *v.* Hydrotated Anthracite Fuel Co., Appellant.

Argued March 4, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Frank P. Slattery,* with him *Edward W. Lopatto,* for appellant.

*James K. Peck,* with him *Neil Chrisman,* for appellee.

OPINION BY DITHRICH, J., April 10, 1946:

Plaintiff, a coal trucker, was injured while on the premises of defendant for the purpose of receiving a

load of coal. He brought this action of trespass and recovered a verdict which the court below refused to set aside. From the refusal of its motion for judgment n. o. v. defendant has brought this appeal.

In disposing of an appeal from the refusal of a motion for judgment n. o. v. it is incumbent on us to consider the evidence in the light most advantageous to appellee resolving every conflict in his favor and giving him the benefit of every fact and inference of fact, and rejecting all other facts and inferences of fact excepting only incontrovertible physical facts. Reviewing the testimony in that light, plaintiff had driven his truck into a building, open at both ends, owned and operated by defendant and described as a washery or breaker. He stopped the truck under a coal chute or pocket indicated by the loader, an employee of defendant, for the purpose of having it loaded with coal. The coal is loaded into the trucks from the chute in a conical heap and it is necessary for the truckers to level it off. For that purpose shovels are kept on a platform known as the loading platform, about three feet in width running the length of the building and about seven or eight feet from the ground. Two electric fans were installed 5½ feet above the platform. Each fan had four twelve-inch blades. They were entirely open at the back through which air was sucked in and blown out in front through radiators, similar to automobile radiators, in order to keep the wet coal in the pockets from freezing. The fans had been in operation for some time prior to the date of the accident, to wit, December 6, 1941.

Plaintiff, in walking along the platform looking for a shovel, had to pass underneath the fans. As he was 5 feet 10½ inches in height and the fans were only 5½ feet above the platform, it was necessary for him to stoop or bend over when passing beneath them. While in that position he felt his hat being drawn from his head by the suction from one of the fans and instinctively reached for his hat to keep it from being blown away.

In so doing, his left hand came in contact with the fan with the result that it was seriously and permanently injured.

While readily conceding that plaintiff was a business visitor to whom it owed an affirmative duty to keep its premises in a reasonably safe condition or to warn him of any dangerous condition which it knew or should have known existed (*Vetter v. Great Atlantic & Pacific Tea Co.*, 322 Pa. 449, 185 A. 613; *Markman v. Fred P. Bell Stores Co.*, 285 Pa. 378, 132 A. 178; *Durning v. Hyman*, 286 Pa. 376, 133 A. 568; *Curt v. Ziman*, 140 Pa. Superior Ct. 25, 12 A. 2d 802; Restatement, Law of Torts, Sec. 343) it is urged by defendant that the relationship did not exist at the time of the accident since plaintiff's purpose in visiting the premises did not require him to be on the loading platform; in other words, that he was where he had no business to be.

In our opinion that argument is without merit. The best answer to it is found in the testimony of plaintiff's witnesses and the admission from the witness stand by one of defendant's employees that it was usual and customary for truck drivers to step up onto the loading platform to get the shovels that were customarily kept there and were used by them in leveling off the coal after it had been dumped into the trucks from the chutes. This testimony clearly establishes that business visitors customarily used the platform for the purpose of the invitation and that its usage brought them in close proximity to the fans.

What then was the duty of the appellant with respect to the fans? It contends that: "There is not the slightest suggestion [in the Act of May 2, 1905, P. L. 352, repealed and supplied by the Act of May 18, 1937, P. L. 654, 43 P.S. §25-2(b)] that an electrical fan of the size and character used in the coal breaker . . . should be protected. We realize, of course, the common law liability of any possessor of land toward a business invitee." As stated by this court in *Irwin v. Leuten Brick Co.*, 59 Pa. Su-

perior Ct. 150, 153, 154: "The principle of liability for accidents caused from unguarded machinery had its origin before the act of 1905 existed. As was said by Mr. Justice POTTER, in Fegley v. Lycoming Rubber Co., 231 Pa. 446, 'The common experience of mankind has shown the danger to be apprehended from unguarded machinery, and especially that from uncovered, revolving cogwheels, and has made clear the duty of protecting from that danger those whose duties bring them in proximity to such machinery. The statute has merely crystallized the demands of ordinary prudence, in requiring that cogwheels, gearing and other machinery shall be covered.' " And in *Jones v. American Caramel Co.,* 225 Pa. 644, 74 A. 613, a case decidedly similar on its facts to the instant case, the Supreme Court said, page 650, that: "The legislative mandate . . . that machinery of every description shall be properly guarded . . ." applied to "revolving" fans. The Act of 1937 requires that all "electrical equipment" shall be properly guarded. In the *Jones* case an exhaust fan was set in an opening in the wall about five feet from the floor. An employee of defendant who was unfamiliar with the fan and did not know it was unguarded was working beneath it and while so engaged ". . . felt that his hat was being drawn from his head, and, reaching up his left hand to keep it on, that member was caught in the revolving fan . . ." The court held that whether the fan had been properly guarded was a question of fact for the jury as was the alleged negligence of the employee. The same ruling applies to the case at bar. It was for the jury to determine whether appellant kept its premises in a reasonably safe condition for the uses and purposes of the invitation extended to its business visitors and so as not to expose them to hidden dangers. Whether appellee was guilty of negligence in the circumstances was likewise for the jury to determine. He had been on appellant's premises only two or three times and had never seen the fans before the day of the accident. He

of course became aware of their presence when he stooped to walk under them, but there was nothing to visit him with knowledge of any hidden danger or of appellant's failure to provide guards for the revolving blades. Whether he should have seen they were unguarded when he passed by and beneath them and whether he exercised the care of a reasonably prudent person to avoid coming in contact with them were clearly questions of fact for the jury and not questions of law for the court.

The judgment is affirmed.