**Mancini v. Giant Food Stores Inc.**

C.P. of Montgomery County, no. 01-24708.

*Thomas W. Sheridan,* for plaintiffs.
*Mark T. Riley, Thomas J. McKenzie, Robert C. Pugh, Thane C. J. Trotman, Bruce D. Lombardo* and *John F. Kent,* for defendants.

SMYTH, *J.,* August 24, 2010—

## I. INTRODUCTION

Plaintiff Mark Mancini was a bread deliveryman who slipped and fell on a patch of ice outside a Giant Food Store, fracturing his leg. He and his wife sued Giant and Montgomery Square Partnership, owner of the development where the store was located and the party responsible for maintaining the common areas, for personal injuries and loss of consortium.

At trial, there was evidence that Mancini had parked his delivery truck in front of the Giant and entered and exited the store through the front door when the accident happened, although he had been directed by store employees not to access the store through the front and that he should use only the receiving area in the back. There was also testimony by store employees that on the occa-

sion of the accident a wide path had been cleared through ice and snow to the front door of the store, and that the patch of ice where Mancini fell was off the path and was an open and obvious condition.

The court instructed the jury on the duty owed by a possessor of land to a business invitee, as well as, over plaintiff's objection, to a trespasser. The jury returned a verdict in favor of defendants, finding no negligence on their part.

In a motion for a new trial, and in this appeal to the Superior Court of Pennsylvania after denial of the post-trial motion, plaintiffs raised as the sole issue whether we had erred in alternatively instructing the jury on the definition of trespasser and the duty owed to a tres-passer. This opinion is written pursuant to Pa.R.A.P. 1925 to explain the reasons for our ruling, and to suggest that the Superior Court should affirm it.

## II. STATEMENT OF THE CASE

### A. *Standard of Review of the Evidence*

Where a motion for a new trial is based on an alleg-edly erroneous jury charge, the appellate court must examine the charge against the evidence adduced at trial. *Palange v. City of Philadelphia Law Department,* 433 Pa. Super. 373, 377, 640 A.2d 1305, 1307 (1994). In determining the applicability of instructions given by the trial judge to the evidence, the appellate court must read the evidence in the light most favorable to the ap-pellee (the winner of the verdict). *Clee v. Brinks Inc.,* 135 Pa. Super. 345, 354, 5 A.2d 387, 392 (1939); see also, *Steingart v. Kaney,* 144 Pa. Super. 534, 19 A.2d 499 (1941) (reviewing evidence on appeal from a ruling

refusing binding instructions in the light most favorable to appellee/verdict winner). In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, the Superior Court must conclude that the verdict would change if another trial were granted. *Foflygen v. Allegheny General Hospital,* 723 A.2d 705, 708 (Pa. Super. 1999) (citing *Childers v. Power Line Equipment Rentals Inc.,* 452 Pa. Super. 94, 104, 681 A.2d 201, 206 (1996) (quoting *Dougherty v. Edward J. Meloney Inc.,* 443 Pa. Super. 201, 225, 661 A.2d 375, 387, (1995))) (affirming denial of a motion for new trial including a claim of improper jury instruction); *Robertson v. Atlantic Richfield Petroleum Products Co.,* 371 Pa. Super. 49, 61, 537 A.2d 814, 820 (1987) (affirming denial of a motion for new trial including numerous claims of error in points for charge).

As we properly instructed the jury, it is sole judge of the facts, and its findings cannot be disturbed if they are supported by competent evidence. A reviewing court (and, by extension, an instructing court) "may not consider the veracity of the witnesses, the conflict of testimony, or the weight of the evidence." *Kimble v. Mackintosh Hemphill Co.,* 359 Pa. 461, 467, 59 A.2d 68, 71 (1948). "These are matters exclusively for the jury." *Id.* Questions of credibility and conflicts in evidence are for the fact-finder to resolve. *Foflygen,* 723 A.2d at 712. As the finder of fact, the jury exercises the prerogative to believe all, some, or none of the evidence presented. *Boggavarapu v. Ponist,* 518 Pa. 162, 169, 542 A.2d 516, 519 (1988); *Rafter v. Raymark Industries Inc.,* 429 Pa. Super. 360, 372, 632 A.2d 897, 903 (1993). "[A] jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic."

*Campagna v. Rogan,* 829 A.2d 322, 329 (Pa. Super. 2003); see also, *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995). The jury's prerogative as judge of the facts is bound only by the restraint that there be support for the verdict to be found in the record, consistently with the standard that the verdict not shock our sense of justice. *Campagna,* 829 A.2d at 328; *Rafter,* 429 Pa. Super. at 372, 632 A.2d at 903.

## B. *Facts the Jury Could Have Found Based on the Evidence*

In presenting and arguing post-trial motions, plaintiffs offered a selective version of the evidence at trial viewed in the light most favorable to them. However, having reviewed all the evidence presented at trial through the lens of the prism provided by the appellate courts in cases of challenges to jury instructions, we find that the post-trial brief of one of the verdict-winners, Giant Food Stores, provides a fair summary of the facts proved at trial, as the jury may have chosen to interpret them in finding in Giant's favor. We shall interpolate our own observations of the evidence as we experienced them in presiding over the trial as arbiter of the relevant legal, not factual, determinations to be made in the case, including the decision to charge the jury in a nonbinding fashion on the duty owed by a landowner to a trespasser as well as to a business invitee.

"Plaintiff Mark Mancini is a deliveryman for Stroehmann Bread. On February 7, 2000, at approximately 5 a.m., he parked his delivery truck along the curb in front of the front entrance of the Giant Store in Montgomery Square Shopping Center, in North Wales, Pennsylvania. The Giant store was new and had been open for business

for approximately two weeks before Mr. Mancini's accident.

"The evidence adduced at trial through the testimony of two Giant employees at the time, the receiver Michael Mocarsky and manager Joanne Kirby, showed that Mr. Mancini had been repeatedly admonished by Giant and its employees that he was not to use the front entrance for his bread deliveries/inspection, that he should use only the receiving entrance in the rear of the store, and, that his deliveries were to be restricted to certain times. (The Giant was a 24-hour store, but at the time Mancini arrived only one front entrance was open for business.) The record showed that Mr. Mancini ignored and violated these instructions on February 7, 2000[,] by parking his vehicle at the front curb and by proceeding through the front door of the Giant store to check his bread stock. Plaintiff Mancini testified, on the other hand, that no one from Giant had ever told him at any time before his fall that he was not permitted to check his stock through the front door or to park his vehicle at the front of the store. However, Mr. Mancini conceded that no one ever told him that he was permitted to enter the store through the front door or to park his truck where he parked it.

"The record reflects that there had been a recent snow storm prior to February 7, 2000. A clear path had been shoveled between the front entrance of the Giant store and the parking lot. Mr. Mancini did not travel the cleared path, however. Two witnesses, [f]ormer Giant employee and night manager Bill McDevitt and Giant employee Al Barndt[,] testified that they observed Mr. Mancini cut the corner and walk across a large and obvious patch of ice near a column. As Mr. Mancini did so, the two witnesses observed him slip and nearly fall on the patch of

ice. Mr. Mancini then entered the Giant store through the front entryway. A few moments later, Mr. Mancini exited the store and then fell on the same ice patch, fracturing his leg. Additionally Mr. Mancini admitted that he had walked over the same path within one to two feet of the ice patch, five to seven times in the week preceding the accident without seeing the ice.

"Giant employee Vicki D'Amico testified that she and others from Giant were aware of the ice before the date of the fall. However, she further testified that the ice condition was open and obvious and that no one should have any difficulty in observing the condition. Bill McDevitt testified that he was well aware of the ice but that he had chosen not to do anything to remove it because it was open and obvious. Al Barndt similarly testified that the ice was an open and obvious condition. He testified that he had never imagined that anyone who was looking where [he was] going could have possibly stepped on the area of ice because it was so obvious and only after Mr. Mancini fell did he realize that anyone could be so careless as to step on it." (Br. def. Giant Food Stores opp'n mot. post-trial relief 2-4.)

To Giant's recitation of the facts shown by the evidence at trial, we will add our own commentary. A "blizzard" had disrupted the opening of the Giant store two weeks earlier; since then ice had been an ongoing issue at the store. (Trial tr. vol. 3, 126.) It was a rainy, icy period; it may have rained the day before the accident. (Trial tr. vol. 2, 126.) The head manager of the store at the time, Joanne Kirby, described the condition of the location where Mancini fell as the result of intermittent thawing and freezing after the recent blizzard. (Trial tr. vol. 3, 126-27, 159-60.) She admitted under questioning

from the landlord's attorney of the possibility that some-one had been working periodically during that time to remove the ice that formed. (Trial tr. vol. 3, 149-60.)

Although the description of the ice on which Mancini fell differed depending on the witness, Barndt, one of the employees who testified he had watched Mancini slip on the ice before entering the store, testified as on cross-examination by plaintiffs' counsel that the patch was "[v]ery thick," (Trial tr. vol. 2, 123, December 16, 2008), "like an iceberg," (Trial tr. vol. 2, 122). "[I]t was very noticeable. It was a lot of ice." (Trial tr. vol. 2, 123.) "Salt would[] have done nothing on that ice. That ice was so thick salt would[] do nothing to that ice. . . . You would not have been able to shovel that ice. It was not ice cubes. It was solid—like I said, it was an iceberg." (Trial tr. vol. 2, 124.) The "iceberg" over which, accord-ing to Barndt, Mancini chose to walk was a step or two away from the dry walkway cleared from the front door of the store down to the parking lot; upon this walkway there was no ice at all. (Trial tr. vol. 139.)

The jury may also have been impressed with the tes-timony of the head manager of the Giant store at the time of the incident, Joanne Kirby. She was the last witness to testify at trial, and also the one whose testimony was most pertinent to the issue now raised on appeal.

Kirby partly corroborated the testimony of Barndt, McDevitt, and D'Amico, saying the patch of ice Man-cini had stepped up onto was thick, six inches thick "[o]r more." (Trial tr. vol, 3, 130-31, December 16, 2008.) It was pretty obvious and she thought everybody from Giant knew where it was. (Trial tr. vol. 3, 132-33.) She didn't expect people to walk there. (Trial tr. vol. 3, 154.) The patch of ice where Mancini had trod "was

huge. It was thick. It was like a glacier." (Trial tr. vol. 3, 159.) Like the other employees, she, too, marveled, "But, why, when this was all clear?" (Trial tr. vol. 3, 131) (referring to the "wide, clear, dry pathway from the parking lot to [the] door to [the] store" (Trial tr. vol. 3, 143.)).

The main importance of Kirby's testimony to this appeal, however, had to do with the basis upon which this court granted Giant's request to charge the jury alternatively on the duty owed by a possessor of land to trespassers. Like McDevitt, Barndt, and Mocarsky, the "receiver" at the store, Kirby testified that vendors' entering the store through the front door instead of using the back door was against Giant policy (although she did not personally advise Mancini of the policy, as Mocarsky testified he had repeatedly done). Kirby, also testifying initially as on cross-examination, laid out in detail the parameters of the policy and the reasons for it.

Kirby testified that her training as a store manager was that, "[V]endors do not come in through the front door ever. That's for customers." (Trial tr. vol. 3, 134.) Receiving hours for vendors were between 6 and 12 or 12:30 and were posted on the back door. (Trial tr. vol. 3, 133.) "[T]he receiver is the gatekeeper for the store. It is his job to see the vendors come in and go out. That's all part of the procedure for receiving and for loss prevention." (Trial tr. vol. 3, 134-35.) Whether or not a vendor is delivering product or just checking his stock, he should be coming through the back receiving door, because it is the receiver's job to receive the vendors. (Trial tr. vol. 3, 135-37, 147.) "If that is his job, he can't do it from the front door. His job—his desk—all of his equipment is at the back door at the receiving port." (Trial tr. vol. 3, 136.) Kirby elaborated on the concept of "loss prevention":

"The vendor[s], if they go in through the front door, it is the receiver's responsibility to make sure they have nothing in their hands. When they come in, nothing in [their] hands and nothing in [their] hands when they leave the building. If [the receiver] is not there to watch that happen, how do we know what's going on[?] That's why it all happens in the back door; not the front door." (Trial tr. vol. 3, 136.)

Whether or not a deliveryman is making a delivery or just checking stock,

"It is a loss prevention issue. The vendor[s], receiver is supposed to be at the back door when they come in and when they leave so he sees them come in with nothing on them and he will watch them leave with nothing on them. He is the only person that can do that.

"The front of the store we are all doing our own jobs, our responsibilities, so you are not always watching every single person[,] which is why there's such high theft going in and out. . . .

"It is a huge issue. . . .

"So [the receiver] kept track of that. He could control that. That's what his job was. . . .

"He had one little door to watch and one—one or two vendors at a time." (Trial tr. vol. 3, 152-53.)

On redirect examination by Giant's counsel, Kirby suggested another reason why Mancini's entry to the store on the morning in question would have been contrary to store policy. In response to the question whether Giant had a policy that would allow vendors and delivery trucks to line up along the front curb, Kirby testified, "No. The vendors went to the back door and that's a fire lane [pictured in an exhibit showing the front

entrance to the store]. . . . That's what that yellow line is. There's supposed to be no parking there at all." (Trial tr. vol. 3, 15 1.)

Kirby's testimony concluded the live testimony at trial. The court admitted exhibits into the record, including photographs of the accident scene witnesses had referred to in their testimony. We also read to the jury, with instructions as to their conclusiveness, several stipulations by the parties, including a stipulation as to the authenticity and admissibility of the lease between Montgomery Square Partnership and Giant Food Stores, and a stipulation that,

"[T]he building occupied by Giant Food Store in Montgomery Square is owned by Montgomery Square Partnership and managed by Vesterra, a property management company hired by Montgomery Square Partnership. It is further stipulated that the area where Mark Mancini claims to have fallen is a common area sidewalk and that Montgomery Square Partnership was responsible for keeping the sidewalk in the area where plaintiff fell reasonably free from ice and snow under the lease agreement." (Trial tr. vol. 3, 164-65.)

## C. *Charge of the Court and Relevant Procedure*

After counsels' closing arguments, the court instructed the jury on the relevant principles of law. The sole basis for the current appeal is the court's decision to instruct the jury on the definition of trespasser and the duty owed by a possessor of land to a trespasser, as well as on the duty owed to a business invitee.

The court's charge on the issue, in its entirety, is as follows:

"In this particular case, I am going to . . . discuss with you an invitee on the property and a trespasser on property.

"An invitee can be a public invitee or a business visitor. A public invitee is a person who is invited to enter or remain on land as a member of the public for the purpose of which the land is held open to the public.

"A business visitor is a person who is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the owner or occupier of the land.

"An owner or a[n] occupier of the land is required to use reasonable care in the maintenance and the use of the land and to protect invitees from foreseeable harm.

"An owner or occupier of the land is also required to inspect the premises and to discover dangerous conditions. An owner or an occupier of land is liable for harm caused to invitees by a condition on the land if: One, the owner or the occupier knows or by using reasonable care would discover the condition and should realize that involves an unreasonable risk of harm.

"Two: The owner or the occupier should expect that the invitees will not discover or realize the danger or will fail to protect themselves against it.

"And, three, the owner or the occupier fails to use reasonable care to protect the invitees against the dangers.

"An owner or a[n] occupier of land is liable to invitees for any harm that the owner or the occupier should have anticipated regardless of whether the danger is known or obvious.

"Now, members of the jury, a trespasser, and I believe it is fair to say that the plaintiffs maintain all of the evidence they have prove[d] that Mr. Mancini is an invitee— a business invitee. I believe the defense claimed that he is a trespasser. So I'in reading you this charge.

"A trespasser is a person who enters or remains on the land in the possession of another without the right or the privilege to do so.

"If you find from the evidence that plaintiff remained on the premises of the defendant without permission, right, lawful authority, expressed or implied, invitation or consent, the legal status then and there was that of a trespasser.

"In that event, if the defendant owner or . . . the defendant/occupier knew or had reason to know of the plaintiff's trespasser's presence, the defendants' only duty to the plaintiff was to refrain from willful or recklessness [sic] conduct that would necessarily cause injury to the plaintiff." (Trial tr. vol. 3, 192-95.)

After charging the jury, the court repaired to chambers with counsel and the court reporter to place an objection on the record. Plaintiffs' counsel stated,

"Your honor, we, the plaintiff, object to the court's charge on the definition of trespasser and the land owner's duty of care to a trespasser as we argued to you before the charge. We believe that the plaintiff is an invitee and the trespasser doctrine applies in no way to this case." (Trial tr. vol. 3, 214.)

Giant's counsel rejoined, "Just for clarification. Based on the way you phrased it, you are not objecting to the language of the charge, you are objecting to the fact that the charge was given?" (Trial tr. vol. 3, 214.) Plaintiff's

counsel replied, "I'm objecting to both the language of the charge and the fact that the charge was given." (Trial tr. vol. 3, 215.) Counsel, however, did not point to any specific language in the charge that he found objectionable, aside from the fact that the charge was given at all. In ruling on the objection, the court said, "The language is right out of the standard charge book. (2 Pa. Suggested Standard Civil Jury Instructions §§ 7.010, 7.02C (3d ed. Civil Instructions Subcomm., Pa. Sup. Ct. 2009).) You can preserve the record. I understand the objection. You made the objection prior to the charge." (Trial tr. vol. 3, 215.) The parties returned to the courtroom, and the jury retired to deliberate.

The court had submitted the case to the jury with standard special interrogatories for a personal-injury suit. The first question(s) the court instructed the jury to answer was whether either defendant was negligent. (Trial tr. vol. 3, 205.) If the answer in both instances was no, the court instructed, the jury was to return to the courtroom as the case was over. (Trial tr. vol. 3, 205.) If the jury answered yes to either question, deliberations were to continue seriatim on the remaining questions concerning factual cause, comparative negligence, and so on, according to the court's instructions on those questions.

In the course of their deliberations the jury returned to the courtroom with a written question for the court asking, "Can you repeat the definition of causal—?" (Trial tr. vol. 3, 216.) The court then, without objection, repeated, at length, the definition of causal negligence, as being comprised of negligence and factual cause. (Trial tr. vol. 3, 216-22.) At that point, the spokesperson for the jury persisted: "What's the difference between negligence and an unfortunate circumstance?" (Trial tr.

vol. 3, 222.) After an exchange with the court in which the court focused on the instructions it had given, the juror stated, "I need to know what negligence is in terms of what is reasonable." (Trial tr. vol. 3, 223.) The court, again, without objection, defined the legal term negligence (Trial tr. vol. 3, 223-25) and, after briefly responding to further questions from the juror, consigned the jury to further deliberations.

The jury returned with a verdict, answering "no" to the question was Montgomery Square Partnership negligent and "no" to the question was Giant Food Stores negligent. (Trial tr. vol. 3, 226-27; verdict sheet question no. 1.) At plaintiffs' counsel's request, the court had the jury polled, and the jury unanimously affirmed that at least 10 of the 12 jurors were in accordance with the verdict as announced by the foreperson and understood by the court. (Trial tr. vol. 3, 227-30.)

Plaintiffs filed a post-verdict motion, seeking a new trial on the ground of the court's having given the jury instructions defining trespasser and the duty owed to a trespasser by a possessor of land. (Pls.' mot. post-trial relief paras. 2-3, 10, 34.) The motion complained that the court's charge caused unnecessary confusion and prevented the jury from rendering a fair and just verdict. (Pls.' mot. post-trial relief para. 4, 34.) The motion did not claim that the jury's verdict was ambiguous or inconsistent or against the weight of the evidence produced at trial. Cf. *Khan v. Mercanti,* no. 01-09010 (C.P. Montg. Cty. June 22, 2009), *vacated,* no. 1410 EDA 2009 (Pa. Super. Ct. June 29, 2010) (discussing distinction between a jury's inconsistent verdict which must be challenged by contemporaneous objection versus a verdict against

weight of the evidence which must be challenged by post-verdict motion).

After briefing and oral argument of the post-verdict motion for a new trial, the court denied the motion in an order entered November 12, 2009. Plaintiff appealed our order to the Superior Court of Pennsylvania. Although an order denying post-trial motions is interlocutory and not appealable, *Fisher v. Central Cab Co.,* 945 A.2d 215, 217 n.1 (Pa. Super. 2008), defendant Giant Food Stores, on December 11, 2009, entered judgment on the verdict pursuant to Pa.R.A.P. 301(d), such that the appeal previously filed related forward to the date of judgment. *Id.* at 217-18 n.1.

The notice of appeal did not, as required by Pa.R.A.P. 904(c), contain a request for transcript or statement in lieu thereof. However, the court had previously had transcribed, approved, and lodged of record the notes of testimony as requested in plaintiffs' post-verdict motion.

We ordered a concise statement of matters complained of on appeal under Pa.R.A.P. 1925. On January 4, 2010, plaintiffs filed a four-page statement pursuant to the rule, raising again the claim that the court had improperly instructed the jury on the definition of a trespasser and the duty a possessor of land owed to a trespasser.

## III. QUESTION PRESENTED FOR REVIEW

Did the court commit no prejudicial error in instructing the jury on the definition of trespasser and the duty owed to a trespasser of land as well as on the duty owed a business invitee where there was evidence the plaintiff bread deliveryman slipped and fell on an open and obvi-

ous patch of ice on a common area walkway next to a cleared pathway to the front door of a supermarket after parking his truck next to a fire lane in front of the store and entering the store to check his stock despite having been told repeatedly by the store's receiver of store policy that vendors must enter only through the back receiving door during receiving hours, and the jury found no negligence on the part of the store or the owner of the common area after asking the court to redefine causal negligence without indicating any confusion as to the deliveryman's status as a trespasser or business invitee or the duty owed to either by a possessor of land? We respectfully suggest that, under the standard for reviewing a claim of error in jury instructions, we cannot be found to have prejudicially erred and the judgment on the jury's verdict should be affirmed.

## IV. DISCUSSION

### A. *Standard of Review of Jury Instructions*

In examining jury instructions, the scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. *Von der Heide v. PennDOT,* 553 Pa. 120, 123, 718 A.2d 286, 288 (1998). Error in the jury charge is sufficient ground for a new trial if the charge, taken as a whole, is inadequate or unclear or has the tendency to mislead or confuse rather than to clarify a material issue. *Id.* A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge amounting to fundamental error. *Id.* Jury instructions must be upheld if they

adequately and accurately reflect the law and are sufficient to guide the jury in its deliberations. *Id.* at 126-27, 718 A.2d at 290.

Even if a charge is erroneous, a complaining party may receive a new trial only if it can be shown that the instruction might have prejudiced him. *Palange v. City of Philadelphia Law Department,* 433 Pa. Super. 373, 377, 640 A.2d 1305, 1307 (1994). So long as the charge as a *whole* cannot be demonstrated to have caused fundamental prejudicial error, there will not be a reversal. *Von der Heide,* 553 Pa. at 127, 718 A.2d at 290. Where the accuracy of a charge is in issue, an appellate court must look to the charge in its entirety against the background of the evidence to determine whether or not error was committed and whether that error was prejudicial to the complaining party. *Slavish v. Ratajczak,* 277 Pa. Super. 272, 274, 419 A.2d 767, 768 (1980) (affirming judgment entered on jury verdict over objection the trial court had erroneously instructed the jury on the duty owed to a trespasser as well on the duty owed to a licensee).

### B. *Law Governing Respective Duties to Trespassers or Invitees on Land*

The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, a licensee, or an invitee. *Carrender v. Enterer,* 503 Pa. 178, 184, 469 A.2d 120, 123 (1983); *Palange,* 433 Pa. Super. at 377, 640 A.2d at 1308. Generally the determination of whether an entrant upon land is an invitee, a licensee, or a trespasser is one of fact for the jury. *Id.* at 377, 640 A.2d at 1307. Only where the evidence is insufficient to support an issue as

to the entrant's status may it be appropriate for a court to remove that issue from the jury. *Id.*

The law "defines a 'trespasser' as 'a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.'" *Id.* at 378, 640 A.2d at 1308 (quoting Restatement (Second) of Torts §329 (1965)); accord *Rossino v. Kovacs,* 553 Pa. 168, 172, 718 A.2d 755, 756-57 (1998). "In Pennsylvania, a trespasser may recover for injuries sustained on land only if the possessor of land was guilty of wanton or willful negligence or misconduct." *Id.* at 172, 718 A.2d at 756.

"[A]n 'invitee' is defined in the following manner:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Palange,* 433 Pa. Super. at 378, 640 A.2d at 1308 (quoting Restatement, *supra,* section 332)).

On the other hand, possessors of land owe a duty to protect invitees from foreseeable harm. *Carrender,* 503 Pa. at 185, 469 A.2d at 123. With respect to conditions on the land that are known to or discoverable by the possessor, the possessor is subject to liability only if he:

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee[s], and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger." *Id.* at 185, 469 A.2d at 123.

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. *Id.* The law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee. *Id.* "A danger is deemed to be 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Id.* (quoting Restatement, *supra,* section 343A cmt. b). For a danger to be "known," it must not only be known to exist but also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated. *Id.* at 185, 469 A.2d at 124 (quoting Restatement, *supra,* section 343A cmt. b). The question of whether a danger was known or obvious is usually a question of fact for the jury, although a court may decide the question where reasonable minds could not differ as to the conclusion. *Id.* at 185-86, 469 A.2d at 124.

However, on the jury question whether an entrant upon land who sustains bodily harm is at the time he is injured a trespasser, a licensee, or an invitee, the law recognizes that,

"One who is permitted to enter a particular part of the land for a particular time or for a particular purpose becomes a trespasser if he enters another part of the land or remains upon the land after that time has expired or for an unreasonable time after the purpose of the visit is accomplished." Restatement, *supra,* section 341 cmt. b.

A license to enter land does not extend beyond the area to which the permission applies. *Porreca v. Atlantic Refining Co.,* 403 Pa. 171, 174, 168 A.2d 564, 566 (1961). "A trespasser is one who enters the land of another without any right to do so *or who goes beyond the rights and privileges which he or she has been granted by license or invitation."* *Oswald v. Hausman,* 378 Pa. Super. 245, 253, 548 A.2d 594, 598 (1988). (emphasis added)

In *Porreca* the plaintiff truck driver entered the defendant's plant past a guardhouse using a pass he had been issued to pick up a load of motor oil; however, instead of going to the part of the plant where he was to get the oil, he went to a different part of the premises, entered the defendant's garage without invitation to look for wrenches to repair his truck, and fell into a grease pit between two parked tankers. 403 Pa. at 172-73, 168 A.2d at 565-66. He had once or twice before borrowed wrenches, but hadn't previously been in that part of the defendant's premises where the garage was. *Id.* at 173, 168 A.2d at 566. On these facts, the Pennsylvania Supreme Court upheld the trial court's entry of a nonsuit in the plaintiff's personal-injury action against the defendant, holding as a matter of law that at the time of the accident he had been a trespasser to whom the defendant owed only a duty not of willfully or wantonly inflicting injury. *Id.* (alternative holding). The ruling relied upon,

among other cases, *Dumanski v. City of Erie,* 348 Pa. 505, 34 A.2d 508 (1943), and *Prokop v. Becker,* 345 Pa. 607, 29 A.2d 23 (1942).

In *Dumanski,* over a period of time a city had permitted licensees to use a roadway to enter a city dump to deposit refuse; on the occasion in question the plaintiff's two sons entered the dump to dispose of waste and to gather coal from ashes dumped there. 348 Pa. at 506, 34 A.2d at 509. They then went to a cinder pile 50 feet or so off the roadway and entered a cave formed earlier by city employees' removal of cinders from the pile, which had frozen. *Id.* The pile collapsed, killing one of the boys. *Id.* In an action by the boy's mother against the city, the trial court entered a nonsuit. On appeal, the Pennsylvania Supreme Court found no duty to the boys on the city's part, stating, "The existence of a duty in any given situation is predicated on a relationship existing at the time in question. The quantum of due care required of a possessor of land to one upon his property is determined by an examination of existing facts and circumstances." *Id.* at 507, 34 A.2d at 509. "One who is invited or permitted to enter a particular part of the land becomes a trespasser if he enters another part of the land." *Id.* "[A] license does not extend beyond the area to which the permission applies." *Id.*

"Here the license extended only to the use of the path for the purpose of taking refuse to the city dump. When the decedent extended his activities beyond the scope of the license and entered into the excavation 50 feet away his status as a gratuitous licensee no longer remained; he was now a trespasser." *Id.*

Finding as a matter of law the decedent had been a trespasser and the city had breached no duty, the Penn-

sylvania Supreme Court affirmed the nonsuit. Cf. *Whigham v. Pyle,* 224 Pa. Super. 6, 302 A.2d 498 (1973) (affirming summary judgment for a landowner holding that a child who was injured at a point on a property where children never went 150 yards distant from a part of the land where children regularly played was owed no higher duty than that of a landowner to a trespasser and not the heightened duty of care owed under Restatement (Second) of Torts §339 (1965) to a child injured by an artificial condition on land where a possessor knows or has reason to know children are likely to trespass).

Similarly, in *Prokop* a boy was struck by the landing gear of an airplane while riding his bike on a road next to the runway of an airfield. 345 Pa. at 608, 29 A.2d 24. In an action in trespass, his parents obtained a judgment on the verdict of a jury against the operators of the airfield. *Id.* at 607-608, 29 A.2d at 24. On appeal, the Pennsylvania Supreme Court reversed, holding that the boy had been a trespasser on the road, even though he had been a licensee to play in the area around the airplane hangars, "for a license does not extend beyond the area to which the permission applies." *Id.* at 609, 29 A.2d at 25.

In *Gaul v. Consolidated Rail Corp.,* 383 Pa. Super. 250, 556 A.2d 892 (1989), the plaintiffs' decedent was struck and killed by a train while lying in the middle of a track away from the regular railroad crossing, and they sued the railroad. The trial court granted a compulsory nonsuit and entered judgment for the railroad. On appeal, plaintiffs argued the case was sufficient to have been submitted to the jury on the question whether the decedent was owed the duty owed to someone in a permissive

railroad crossing. 383 Pa. Super. at 255, 556 A.2d at 894. The Pennsylvania Superior Court defined a permissive crossing as an express or implied license to pass over the property of another, and said the determination of whether or not a permissive crossing exists is one to be made on the facts of each case. *Id.* at 256, 556 A.2d at 894. The court noted that "where a permissive crossing is found to exist, the person using the crossing is said to be a licensee of the railroad company." *Id.* at 259, 556 A.2d at 896. However, the court wrote, a licensee's privilege to enter land created by the occupier's consent is terminated by the doing of any act, or the happening of any event, or the lapse of any specified period of time, by which the consent is restricted. *Id.* at 259, 556 A.2d at 896. The court held that by lying down on the track instead of using the license for the purpose for which it was given, that is, to cross the tracks, the decedent had removed himself from the status of licensee of the railroad, and ruled to affirm the nonsuit. *Id.* at 260-62, 556 A.2d at 897.

In the cases just discussed, the appellate courts decided the parties' status as trespassers on land as a matter of law. In our case, we submitted the issue whether Mancini was a business invitee or a trespasser on land to the jury, with appropriate instructions as to the distinction between them and the duty owed by a landowner to each.

However, just as in the reported cases, there was evidence from which the jury could have concluded Mancini was a trespasser at the time he was injured because he went beyond the scope of his license to enter the store as a business invitee by exceeding the limitations store personnel had communicated to him about the place and

time he could enter the store as a vendor, namely, during normal receiving hours through the back receiving door past the receiver's station, rather than after parking his truck in a fire lane and proceeding through the front customers' entrance at a time when the receiver was not on duty. Although Mancini testified to the contrary that he was never told not to enter through the front door and that he had done so several times, resolution of any conflicts in testimony was for the jury. The court's decision to instruct the jury on the standards applicable to trespassers on land as well as to invitees was therefore proper based on the evidence at trial.

In their post-trial claim of error in the court's instructing the jury on the law applicable to trespassers, plaintiffs argued that a business visitor does not exceed his or her status and lose his or her privilege by being in a place where it is usual and customary for a business visitor to be, citing *Barron v. Hydrotated Anthracite Fuel Co.,* 159 Pa. Super. 35, 46 A.2d 506 (1946), and *Updyke v. BP Oil Co.,* 717 A.2d 546 (Pa. Super 1998). We do not find those cases pertinent to defendants' argument that Mancini could have been found by the jury to be a trespasser because he exceeded the restrictions as to the place and time of his entry on the property as a vendor as communicated to him by the store.

In *Barron* the plaintiff, a coal trucker, was injured while on the defendant's premises for the purpose of receiving a load of coal. 159 Pa. Super. at 35-36, 46 A.2d at 507. He sued the defendant and recovered a verdict that the lower court refused to set aside on a motion for judgment notwithstanding the verdict, and the defendant appealed. *Id.* at 36, 46 A.2d at 507. In reviewing the appeal from the refusal to enter judgment n.o.v., the Supe-

rior Court was obliged to consider the evidence in the light most advantageous to the appellee, resolving every conflict in his favor and giving him the benefit of every fact and inference of fact, and rejecting all other facts and inferences of fact except incontrovertible physical facts. *Id.* at 36, 46 A.2d at 507. So viewed, the testimony showed the plaintiff had driven his truck into a building owned and operated by the defendant and stopped the truck under a coal chute indicated to him by an employee of defendant's to have the truck loaded with coal. *Id.* The coal was loaded into trucks from the chute in a conical heap and it was necessary for the truckers to level it off. *Id.* For that purpose shovels were kept on a loading platform seven or eight feet from the ground. *Id.* Two electric fans operated five and one-half feet above the platform to blow air on the wet coal to keep it from freezing. *Id.* In walking along the platform to find a shovel, the plaintiff had to stoop to get under the fans and felt his hat being drawn from the suction of the fans. *Id.* He instinctively reached for his hat and his hand contacted a fan, resulting in injury. *Id.* at 36-37, 46 A.2d at 507.

On appeal, the defendant conceded that the plaintiff was a business visitor to whom it owed an affirmative duty to keep the premises in a reasonably safe condition or to warn him of any dangerous condition the defendant knew or should have known existed. *Id.* at 37, 46 A.2d at 507. The defendant simply asserted that the relationship did not exist at the time of the accident since the plaintiff's purpose in visiting the premises did not require him to be on the loading platform; in other words, he was where he had no business to be. *Id.* at 37, 46 A.2d at 508.

The Superior Court made short work of this argument, stating,

"The best answer to it is found in the testimony of plaintiffs witnesses and the admission from the witness stand by one of defendant's employees that it was usual and customary for truck drivers to step up onto the loading platform to get the shovels that were customarily kept there and were used by them in leveling off the coal after it had been dumped into the trucks from the chutes. This testimony clearly establishes that business visitors customarily used the platform for the purpose of the invitation and that its usage brought them in close proximity to the fans." *Id.*

Thus, the Superior Court, reviewing the evidence in the light most favorable to the plaintiff, the verdict-winner, determined that it did not show as a matter of law the plaintiff at the time of the accident had lost his status as a business invitee because the accident occurred on a part of the business premises where invitees in his position would usually and customarily be. The court did not comment on evidence to the contrary that it would not be usual and customary for a coal trucker to be on the platform, if there was any such evidence in the case.

*Barron* thus is distinguishable from our case, in which several witnesses testified to the effect that it was against store policy for deliverymen to enter the Giant store through the front door, because all vendors were to enter through the back door during regular receiving hours when the receiver would be there to monitor the vendors. Although there was contrary evidence, this raised a jury question, and thus it was proper for the court to instruct the jury on the duty owed a trespasser in the event they found Mancini to be such at the time of the accident by

virtue of his entering through the front door contrary to store policy.

*Updyke* also is unhelpful to plaintiffs' position. That case dealt with a motorist whose car broke down near the defendant's property, a combination gasoline station and convenience store. The motorist walked to the store to use a phone to call a mechanic, but walked by, without noticing, a public phone at the periphery of the property. 717 A.2d at 548. She entered the shop and asked to use the store's private phone. *Id.* In accordance with company policy, the clerk denied the request and directed her to the pay phone outside. *Id.* Upon discovering the pay phone would not take her change, she walked back to the store to try again to use the private phone inside, and slipped on a patch of ice, suffering a broken ankle. *Id.*

Before trial, the trial judge determined that the motorist was a public invitee to whom the defendant owed a duty to discover and remove the patch of ice, rather than a licensee to whom no such duty applied. *Id.* The judge relied on the existence of a public pay phone on the premises and large lettering on a canopy over the serve area reading "Welcome." *Id.* After the close of the evidence at trial, the judge instructed the jury the motorist was a public invitee, and on the duties related to this status. *Id.* The jury returned a verdict in her favor.

On appeal, the defendant did not claim the motorist was a trespasser, and she did not claim she was a business invitee. *Id.* at 549. The issues on appeal were whether the plaintiff was a "gratuitous licensee" as a matter of law, or whether there was a jury question as to her status as a "gratuitous licensee" or "public invitee." *Id.* at 548-49. The Superior Court found that the facts of

the case were not in dispute, *id.* at 551, and found based on those undisputed facts that the motorist was a public invitee as a matter of law. *Id.* at 549-50. The court thus affirmed the ruling of the trial court.

Here, by contrast, there were disputed issues of fact that led this court to leave to the jury the determination of whether Mancini, at the time of his fall, was a business visitor or a trespasser, as such determinations normally are questions of fact to be resolved by the jury. *Palange,* 433 Pa. Super. at 377, 640 A.2d at 1307. Giant's evidence tended to show that at the time Mancini fell he was entering the store through the front door in contravention of store policy that had been communicated to him by the receiver that he should only enter through the back receiving door. The court's decision to instruct the jury on the definition of trespasser as well as on the duty owed to a trespasser by a possessor of land was not error.

B. *Failure To Show Prejudice From the Jury Charge on Liability to Trespassers*

Plaintiffs cannot meet their burden in seeking a new trial of showing prejudice from the court's instructions to the jury on trespassers. See *Von der Heide,* 553 Pa. at 127, 718 A.2d at 290; see also, *Robertson v. Atlantic Richfield Petroleum Products Co.,* 371 Pa. Super. 49, 61, 537 A.2d 814, 820 (1987) (stating standard of review of denial of a new trial is whether the trial court committed error of law that controlled the outcome of the case or abuse of discretion; in considering all the evidence in light most favorable to appellee the appellate court to reverse the trial court must conclude the verdict would have changed if another trial were granted). There was ample evidence presented at trial that Mancini had acted

negligently in proceeding across an open and obvious ice patch and that defendants' maintaining a clear, dry pathway from the parking lot to the front door of the store demonstrated their lack of negligence, despite Mancini's choosing an alternate path to the door over the contiguous ice. The court also read to the jury the parties' stipulations, including that "Montgomery Square Partnership [defendant landlord] was responsible for keeping the sidewalk in the area where plaintiff fell reasonably free from ice and snow under the lease agreement [with defendant Giant]." (Trial tr. vol. 3, 164-65.) The jury could have found that defendants efforts to clear the ice and maintain a clear pathway were reasonable in the context of the weather conditions at the time of the accident.

Indeed, the jury exhibited no "confusion" over the court's definition of the term "trespasser" or the duty of a possessor of land to a trespasser. The jury's only uncertainty about the court's instructions, as expressed in the questions posed to the court, was about the meaning of negligence and factual cause. The jury appeared to have been struggling with the interplay of "negligence" and "reasonableness," and with the concept of "unfortunate circumstance," a term the court had not used in the charge, and did not use after that. In response to the jury's questions, the court reread several times, without objection from the parties, the instructions as to negligence and causation. The immediate next event, procedurally speaking, was for the jury to come back with a verdict, unanimous as to its being agreed to by at least 10 of the 12 jurors, finding no negligence on the part of either defendant. The verdict was not ambiguous, confused, nor inconsistent, nor was it contrary to the weight of the

evidence introduced at trial such as to shock one's sense of justice. The court's jury instructions defining "trespasser" and the duty owed a trespasser by an occupier of land were based on evidence of record that Mancini lacked permission to enter the Giant store through the front door, and cannot have prejudiced plaintiffs or prevented the rendition of a fair and just verdict.

## V. CONCLUSION

The court instructed the jury on the definition of trespasser and the duty owed by a possessor of land, as well as on to the duty owed a business invitee, because status as a trespasser or invitee is ordinarily a jury question, and there was evidence in the record that, if believed by the jury, showed that the plaintiff deliveryman entered the defendant supermarket through the front door to check his stocks, then upon exiting fell on an open and obvious patch of ice next to a clear, dry pathway from the front door to the parking lot, after having been explicitly advised by employees of the store that he was to enter and exit only through the back receiving door during receiving hours, where the store's receiver, whose job it was, could supervise vendors' visits to the store. The jury rendered a verdict finding no negligence on the part of the store or the store's landlord, exhibiting no confusion about the trespasser charge, only uncertainty about the meaning of negligence and factual cause, the definitions of which the court read and reread to the jury several times, without objection.

The court's instructing the jury on the duty owed a trespasser was not error, and was not prejudicial to the jury's deliberations. We respectfully suggest the Supe-

312

rior Court should therefore affirm the judgment entered on the jury's verdict.